## LOUISIANA POWER & LIGHT CO. v.
## CITY OF THIBODAUX.

No. 398. Argued April 2, 1959.—Decided June 8, 1959.

*J. Raburn Monroe* argued the cause for petitioner. With him on the brief were *J. Blanc Monroe, Monte M. Lemann, Malcolm L. Monroe* and *Andrew P. Carter.*

*Louis Fenner Claiborne* argued the cause for respondent. With him on the brief was *Remy Chiasson.*

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

The City of Thibodaux, Louisiana, filed a petition for expropriation in one of the Louisiana District Courts, asserting a taking of the land, buildings, and equipment of petitioner Power and Light Company. Petitioner, a Florida corporation, removed the case to the United States District Court for the Eastern District of Louisiana on the basis of diversity of citizenship. After a pre-trial conference in which various aspects of the case were dis-

cussed, the district judge, on his own motion, ordered that "Further proceedings herein, therefore, will be stayed until the Supreme Court of Louisiana has been afforded an opportunity to interpret Act 111 of 1900," the authority on which the city's expropriation order was based. 153 F. Supp. 515, 517–518. The Court of Appeals for the Fifth Circuit reversed, holding that the procedure adopted by the district judge was not available in an expropriation proceeding, and that in any event no exceptional circumstances were present to justify the procedure even if available. 255 F. 2d 774. We granted certiorari, 358 U. S. 893, because of the importance of the question in the judicial enforcement of the power of eminent domain under diversity jurisdiction.[1]

In connection with the first decision in which a closely divided Court considered and upheld jurisdiction over an eminent domain proceeding removed to the federal courts on the basis of diversity of citizenship, *Madisonville Traction Co.* v. *St. Bernard Mining Co.,* 196 U. S. 239, 257, Mr. Justice Holmes made the following observation:

> "The fundamental fact is that eminent domain is a prerogative of the State, which on the one hand may be exercised in any way that the State thinks fit, and on the other may not be exercised except by an authority which the State confers."

While this was said in the dissenting opinion, the distinction between expropriation proceedings and ordinary diversity cases, though found insufficient to restrict diversity jurisdiction, remains a relevant and important consideration in the appropriate judicial administration of such actions in the federal courts.

---

[1] In the petition for certiorari there was also raised the question of the appealability of the District Court's order. In our grant of the writ we eliminated this question by limiting the scope of review. 358 U. S. 893.

We have increasingly recognized the wisdom of staying actions in the federal courts pending determination by a state court of decisive issues of state law. Thus in *Railroad Comm'n* v. *Pullman Co.*, 312 U. S. 496, 499, it was said:

> "Had we or they [the lower court judges] no choice in the matter but to decide what is the law of the state, we should hesitate long before rejecting their forecast of Texas law. But no matter how seasoned the judgment of the district court may be, it cannot escape being a forecast rather than a determination."

On the other hand, we have held that the mere difficulty of state law does not justify a federal court's relinquishment of jurisdiction in favor of state court action. *Meredith* v. *Winter Haven*, 320 U. S. 228, 236.[2] But

[2] The issue in *Meredith* v. *Winter Haven*, 320 U. S. 228, is, of course, decisively different from the issue now before the Court. Here the issue is whether an experienced district judge, especially conversant with Louisiana law, who, when troubled with the construction which Louisiana courts may give to a Louisiana statute, himself initiates the taking of appropriate measures for securing construction of this doubtful and unsettled statute (and not at all in response to any alleged attempt by petitioner to delay a decision by that judge), should be jurisdictionally disabled from seeking the controlling light of the Louisiana Supreme Court. The issue in *Winter Haven* was not that. It was whether jurisdiction must be surrendered to the state court. At the very outset of his opinion Mr. Chief Justice Stone stated this issue:
"The question is whether the Circuit Court of Appeals, on appeal from the judgment of the District Court, rightly declined to exercise its jurisdiction on the ground that decision of the case on the merits turned on questions of Florida constitutional and statutory law which the decisions of the Florida courts had left in a state of uncertainty." 320 U. S., at 229.
In *Winter Haven* the Court of Appeals directed the action to be dismissed. In this case the Court of Appeals denied a conscientious exercise by the federal district judge of his discretionary power merely to stay disposition of a retained case until he could get controlling light from the state court.

where the issue touched upon the relationship of City to State, *Chicago* v. *Fieldcrest Dairies, Inc.,* 316 U. S. 168, or involved the scope of a previously uninterpreted state statute which, if applicable, was of questionable constitutionality, *Leiter Minerals, Inc.,* v. *United States,* 352 U. S. 220, 229, we have required District Courts, and not merely sanctioned an exercise of their discretionary power, to stay their proceedings pending the submission of the state law question to state determination.

These prior cases have been cases in equity, but they did not apply a technical rule of equity procedure. They reflect a deeper policy derived from our federalism. We have drawn upon the judicial discretion of the chancellor to decline jurisdiction over a part or all of a case brought before him. See *Railroad Comm'n* v. *Pullman Co.,* *supra.* Although an eminent domain proceeding is deemed for certain purposes of legal classification a "suit at common law," *Kohl* v. *United States,* 91 U. S. 367, 375–376, it is of a special and peculiar nature. Mr. Justice Holmes set forth one differentiating characteristic of eminent domain: it is intimately involved with sovereign prerogative. And when, as here, a city's power to condemn is challenged, a further aspect of sovereignty is introduced. A determination of the nature and extent of delegation of the power of eminent domain concerns the apportionment of governmental powers between City and State. The issues normally turn on legislation with much local variation interpreted in local settings. The considerations that prevailed in conventional equity suits for avoiding the hazards of serious disruption by federal courts of state government or needless friction between state and federal authorities are similarly appropriate in a state eminent domain proceeding brought in, or removed to, a federal court.

The special nature of eminent domain justifies a district judge, when his familiarity with the problems of local law so counsels him, to ascertain the meaning of a disputed state statute from the only tribunal empowered to speak definitively—the courts of the State under whose statute eminent domain is sought to be exercised—rather than himself make a dubious and tentative forecast. This course does not constitute abnegation of judicial duty. On the contrary, it is a wise and productive discharge of it. There is only postponement of decision for its best fruition. Eventually the District Court will award compensation if the taking is sustained. If for some reason a declaratory judgment is not promptly sought from the state courts and obtained within a reasonable time, the District Court, having retained complete control of the litigation, will doubtless assert it to decide also the question of the meaning of the state statute. The justification for this power, to be exercised within the indicated limits, lies in regard for the respective competence of the state and federal court systems and for the maintenance of harmonious federal-state relations in a matter close to the political interests of a State.

It would imply an unworthy conception of the federal judiciary to give weight to the suggestion that acknowledgment of this power will tempt some otiose or timid judge to shuffle off responsibility. "Such apprehension implies a lack of discipline and of disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure." *Kerotest Mfg. Co.* v. *C-O-Two Fire Equipment Co.,* 342 U. S. 180, 185. Procedures for effective judicial administration presuppose a federal judiciary composed of judges well-equipped and of sturdy character in whom may safely be vested, as is already, a wide range of judicial discretion, subject to appropriate review on appeal.

In light of these considerations, the immediate situation quickly falls into place. In providing on his own motion for a stay in this case, an experienced district judge was responding in a sensible way to a quandary about the power of the City of Thibodaux into which he was placed by an opinion of the Attorney General of Louisiana in which it was concluded that in a strikingly similar case a Louisiana city did not have the power here claimed by the City. A Louisiana statute apparently seems to grant such a power. But that statute has never been interpreted, in respect to a situation like that before the judge, by the Louisiana courts and it would not be the first time that the authoritative tribunal has found in a statute less than meets the outsider's eye. Informed local courts may find meaning not discernible to the outsider. The consequence of allowing this to come to pass would be that this case would be the only case in which the Louisiana statute is construed as we would construe it, whereas the rights of all other litigants would be thereafter governed by a decision of the Supreme Court of Louisiana quite different from ours.

Caught between the language of an old but uninterpreted statute and the pronouncement of the Attorney General of Louisiana, the district judge determined to solve his conscientious perplexity by directing utilization of the legal resources of Louisiana for a prompt ascertainment of meaning through the only tribunal whose interpretation could be controlling—the Supreme Court of Louisiana. The District Court was thus exercising a fair and well-considered judicial discretion in staying proceedings pending the institution of a declaratory judgment action and subsequent decision by the Supreme Court of Louisiana.

The judgment of the Court of Appeals is reversed and the stay order of the District Court reinstated. We assume that both parties will cooperate in taking prompt

and effective steps to secure a declaratory judgment under the Louisiana Declaratory Judgment Act, La. Rev. Stat., 1950, Tit. 13, §§ 4231–4246, and a review of that judgment by the Supreme Court of Louisiana. By retaining the case the District Court, of course, reserves power to take such steps as may be necessary for the just disposition of the litigation should anything prevent a prompt state court determination.

*Reversed.*

MR. JUSTICE STEWART, concurring.

In a conscientious effort to do justice the District Court deferred immediate adjudication of this controversy pending authoritative clarification of a controlling state statute of highly doubtful meaning. Under the circumstances presented, I think the course pursued was clearly within the District Court's allowable discretion. For that reason I concur in the judgment.

This case is totally unlike *County of Allegheny* v. *Mashuda Co.*, decided today, *post*, p. 185, except for the coincidence that both cases involve eminent domain proceedings. In *Mashuda* the Court holds that it was error for the District Court to dismiss the complaint. The Court further holds in that case that, since the controlling state law is clear and only factual issues need be resolved, there is no occasion in the interest of justice to refrain from prompt adjudication.

MR. JUSTICE BRENNAN, with whom THE CHIEF JUSTICE and MR. JUSTICE DOUGLAS join, dissenting.

Until today, the standards for testing this order of the District Court sending the parties to this diversity action to a state court for decision of a state law question might have been said to have been reasonably consistent with the imperative duty of a District Court, imposed by Congress under 28 U. S. C. §§ 1332 and 1441, to render

prompt justice in cases between citizens of different States. To order these suitors out of the federal court and into a state court in the circumstances of this case passes beyond disrespect for the diversity jurisdiction to plain disregard of this imperative duty. The doctrine of abstention, in proper perspective, is an extraordinary and narrow exception to this duty, and abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve one of two important countervailing interests: either the avoidance of a premature and perhaps unnecessary decision of a serious federal constitutional question, or the avoidance of the hazard of unsettling some delicate balance in the area of federal-state relationships.

These exceptional circumstances provided until now a very narrow corridor through which a District Court could escape from its obligation to decide state law questions when federal jurisdiction was properly invoked. The doctrine of abstention originated in the area of the federal courts' duty to avoid, if possible, decision of a federal constitutional question. This was *Railroad Comm'n of Texas* v. *Pullman Co.,* 312 U. S. 496. There this Court held that the District Court should have stayed its hand while state issues were resolved in a state court when an injunction was sought to restrain the enforcement of the order of a state administrative body on the ground that the order was not authorized by the state law and was violative of the Federal Constitution. The Court reasoned that if the state courts held that the order was not authorized under state law there could be avoided "the friction of a premature constitutional adjudication." 312 U. S., at 500. Numerous decisions since then have sanctioned abstention from deciding cases involving a federal constitutional issue where a state court determination of state law might moot the issue or put the case in a

different posture. See, e. g., *City of Meridian* v. *Southern Bell Tel. & Tel. Co.,* 358 U. S. 639; *Government Employees Organizing Comm.* v. *Windsor,* 353 U. S. 364; *Leiter Minerals, Inc.,* v. *United States,* 352 U. S. 220; *Albertson* v. *Millard,* 345 U. S. 242; *Shipman* v. *DuPre,* 339 U. S. 321; *Stainback* v. *Mo Hock Ke Lok Po,* 336 U. S. 368; *American Federation of Labor* v. *Watson,* 327 U. S. 582; *Alabama State Federation of Labor* v. *McAdory,* 325 U. S. 450; *Spector Motor Service, Inc.,* v. *McLaughlin,* 323 U. S. 101; *Chicago* v. *Fieldcrest Dairies, Inc.,* 316 U. S. 168.[1] Abstention has also been sanctioned on grounds of comity with the States—to avoid a result in "needless friction with state policies." *Railroad Comm'n of Texas* v. *Pullman* Co., 312 U. S. 496, 500. Thus this Court has upheld an abstention when the exercise by the federal court of jurisdiction would disrupt a state administrative process, *Burford* v. *Sun Oil Co.,* 319 U. S. 315; *Pennsylvania* v. *Williams,* 294 U. S. 176, interfere with the collection of state taxes, *Toomer* v. *Witsell,* 334 U. S. 385, 392; *Great Lakes Dredge & Dock Co.* v. *Huffman,* 319 U. S. 293, or otherwise create needless friction by unnecessarily enjoining state officials from executing domestic policies, *Alabama Public Service Comm'n* v. *Southern R. Co.,* 341 U. S. 341; *Hawks* v. *Hamill,* 288 U. S. 52.

But neither of the two recognized situations justifying abstention is present in the case before us. The suggestion that federal constitutional questions lurk in the background is so patently frivolous that neither the District Court, the Court of Appeals, nor this Court considers it to be worthy of even passing reference. The

---

[1] But when questions of state law are not cloudy the District Court should decide them, even though such a course necessitates decision of a federal constitutional issue. *Chicago* v. *Atchison, T. & S. F. R. Co.,* 357 U. S. 77; *Public Utilities Comm'n of California* v. *United States,* 355 U. S. 534; *Toomer* v. *Witsell,* 334 U. S. 385.

Power and Light Company's only contention under the Federal Constitution is that the expropriation of its property would violate the Due Process and Impairment of the Obligation of Contract Clauses, even though just compensation is paid for it, because the property sought to be taken is operated by the company under a franchise granted by the Parish and confirmed by the City. This claim is utterly without substance. *Long Island Water Supply Co.* v. *Brooklyn,* 166 U. S. 685; *West River Bridge Co.* v. *Dix,* 6 How. 507. Certainly the avoidance of such a constitutional issue cannot justify a federal court's failure to exercise its jurisdiction. To hold the contrary would mean that a party could defeat his adversary's right to a federal adjudication simply by alleging a frivolous constitutional issue. Furthermore, no countervailing interest would be served by avoiding decision of such an issue.

The Court therefore turns the holding on the purported existence of the other situation justifying abstention, stating the bald conclusion that: "The considerations that prevailed in conventional equity suits for avoiding the hazards of serious disruption by federal courts of state government or needless friction between state and federal authorities are similarly appropriate in a state eminent domain proceeding brought in, or removed to, a federal court." But the fact of the matter is that this case does not involve the slightest hazard of friction with a State, the indispensable ingredient for upholding abstention on grounds of comity, and one which has been present in all of the prior cases in which abstention has been approved by this Court on that ground. First of all, unlike all prior cases in which abstention has been sanctioned on grounds of comity, the District Court has not been asked to grant injunctive relief which would prohibit state officials from acting. This case involves an

action at law,[2] initiated by the City and removed to the District Court under 28 U. S. C. § 1441. Clearly decision of this case, in which the City itself is the party seeking an interpretation of its authority under state law, will not entail the friction in federal-state relations that would result from decision of a suit brought by another party to enjoin the City from acting. Secondly, this case does not involve the potential friction that results when a federal court applies paramount federal law to strike down state action. Aside from the patently frivolous constitutional question raised by the Power Company, the District Court in adjudicating this case would be applying state law precisely as would a state court. Far from disrupting state policy, the District Court would be applying state policy, as embodied in the state statute, to the facts of this case. There is no more possibility of conflict with the State in this situation than there is in the ordinary negligence or contract case in which a District Court applies state law under its diversity jurisdiction. A decision by the District Court in this case would not interfere with Louisiana administrative processes, prohibit the collection of state taxes, or otherwise frustrate the execution of state domestic policies. Quite the reverse, this action is part of the process which the City must follow in order to carry out the State's policy of expropriating private property for public uses. Finally, in this case the State of Louisiana, represented by its constituent organ the City of Thibodaux, urges the District Court to adjudicate the state law issue. How, conceivably, can the Court justify the abdication of responsibility to exercise jurisdiction on the ground of avoiding interference and conflict with the State when the State itself desires the federal court's adjudication? It is obvious that the abstention in this case was for the convenience of the District Court, not for

[2] Expropriation proceedings such as this one are recognized to be suits at law. *Kohl* v. *United States,* 91 U. S. 367, 376.

the State. The Court forgets, in upholding this absten-
tion, that "The diversity jurisdiction was not conferred
for the benefit of the federal courts or to serve their con-
venience." *Meredith* v. *Winter Haven,* 320 U. S. 228,
234.

The Court of Appeals, in my view, correctly consid-
ered, in reversing the action of the District Court, that
there is not shown a semblance of a countervailing interest
which meets the standards permitting abstention. The
standard utilized by the Court of Appeals in reviewing the
District Court's order was not whether the district judge
abused his discretion in staying the proceedings; rather
it was whether he had any discretion to abstain from
deciding this case in which the federal court's jurisdiction
was properly invoked. This approach was correct in light
of the teaching of all prior cases, which delimit the nar-
row area in which abstention is permissible and hold that
jurisdiction must be exercised in all other situations. It
would obviously wreak havoc with federal jurisdiction if
the exercise of that jurisdiction was a matter for the *ad
hoc* discretion of the District Court in each particular case.

Despite the complete absence of the necessary showing
to justify abstention, the Court supports its holding
simply by a reference to a dissenting opinion in which it
was said "that eminent domain is a prerogative of the
State." [3] Thus the Court attempts to carve out a new

---

[3] *Madisonville Traction Co.* v. *St. Bernard Mining Co.,* 196 U. S.
239, 257. The District Court did not rest its actions on this theory,
but relied upon *Leiter Minerals, Inc.,* v. *United States,* 352 U. S. 220,
as authority for the stay order. That decision, which came down
shortly before the District Court's order in this case, modified an
order of the same district judge and provided for a reference to the
Louisiana courts of a question of Louisiana law because the state
court's interpretation of state law might well have mooted a federal
constitutional issue or cast it in a different posture. The simple fact
that there is no constitutional question of any substance to avoid in
this case makes *Leiter* inapposite.

area in which, even though an adjudication by the federal court would not require the decision of federal constitutional questions, nor create friction with the State, the federal courts are encouraged to abnegate their responsibilities in diversity cases. In doing so the Court very plainly has not made a responsible use of precedent. First of all, not only does the Court cite no cases where abstention has been approved in the absence of a showing of one of the only two countervailing interests heretofore required to justify abstention, but the Court ignores cases in which this Court has refused to refer state law questions to state courts even though that course required a federal constitutional decision which resulted in affirmative prohibitions against the State from carrying out sovereign activities. Surely eminent domain is no more mystically involved with "sovereign prerogative" than a city's power to license motor vehicles, *Chicago* v. *Atchison, T. & S. F. R. Co.*, 357 U. S. 77, a State's power to regulate fishing in its waters, *Toomer* v. *Witsell*, 334 U. S. 385, its power to regulate intrastate trucking rates, *Public Utilities Comm'n of California* v. *United States*, 355 U. S. 534, and a host of other governmental activities carried on by the States and their subdivisions which have been brought into question in the Federal District Courts without a prior state court determination of the relevant state law. Furthermore, the decision in *Meredith* v. *Winter Haven*, 320 U. S. 228, long recognized as a landmark in this field, is squarely contrary to today's holding. For there the petitioners sought in a Federal District Court an injunction prohibiting the City of Winter Haven from redeeming certain bonds without paying deferred interest charges on them. The only issues in the case were whether the City was authorized under the Florida Constitution and statutes to issue the bonds without a referendum, and, if the bonds were not validly issued, what recovery the bondholders were entitled to receive. Federal jurisdic-

tion was based solely on diversity of citizenship. Although there was present the obvious irritant to state-federal relations of a federal court injunction against City officials, which is not present in this case, this Court in *Winter Haven* held that it was incumbent on the Federal District Court to perform its duty and adjudicate the case. I am unable to see a distinction, so far as concerns non-interference with the exercise of state sovereignty, between decision as to the City of Winter Haven's authority under Florida's statutes and constitution to issue deferred-interest bonds without a referendum, and decision as to the City of Thibodaux's authority under Louisiana's statutes and constitution to expropriate the Power and Light Company's property. Since the Court suggests no adequate basis of distinction between the two cases, it should frankly announce that *Meredith* v. *Winter Haven* is overruled, for no other conclusion is reasonable.[4]

In the second place, the Court, in its opinion, omits mention of the host of cases, many in this Court, which

---

[4] It is true that this Court in *Meredith* v. *Winter Haven* was reviewing an order dismissing federal jurisdiction, whereas the District Court order in this case retains jurisdiction pending the state court determination. However, it is significant that the Court in *Winter Haven*, rather than remanding the case with instructions that the District Court retain jurisdiction but abstain from deciding the state law issues, ordered the District Court to adjudicate those issues. It is perfectly clear that *Winter Haven* did not turn on any difference between an abstention and a dismissal, nor on the fact that it was a Court of Appeals rather than a District Court which initially decided to refrain from adjudicating the state issues. Neither did it turn on this Court's ideas about the competence or experience of the judges below. *Meredith* v. *Winter Haven* rested squarely on the Court's conclusion that, no matter how intimately related to a State's sovereignty a case is, the District Court must adjudicate it if jurisdiction is properly invoked and that adjudication would not entail decision of a serious constitutional question or disruption of state policy.

have approved the decision by a federal court of precisely the same kind of state eminent domain question which the District Court was asked by the City of Thibodaux to decide in this case. Years of experience in federal court adjudication of state eminent domain cases have conclusively demonstrated that this practice does not entail the hazard of friction in federal-state relations. See *County of Allegheny* v. *Mashuda Co., post,* p. 185. The Court, despite the lesson taught by this experience and despite the fact that it is impossible to show any actual friction that might develop from a federal court adjudication in this case, rests its holding on a conclusive presumption that friction will develop because of "the special nature of eminent domain." This presumption is totally at war with the Court's holding today in *County of Allegheny* v. *Mashuda Co.,* which orders a District Court to exercise its diversity jurisdiction even though such a course will require decision as to the power of a County under the state law of eminent domain to expropriate certain property. Thus the Court's decision is explicable to me for two other reasons, neither of which is articulated in the Court's opinion, probably because both are wholly untenable.

The first is that the only real issue of law in the case, the interpretation of Act 111, presents a difficult question of state law. It is true that there are no Louisiana decisions interpreting Act 111, and that there is a confusing opinion of the State's Attorney General on the question. But mere difficulty of construing the state statute is not justification for running away from the task. "Questions may occur which we would gladly avoid; but we cannot avoid them. All we can do is, to exercise our best judgment, and conscientiously to perform our duty." *Cohens* v. *Virginia,* 6 Wheat. 264, 404. Difficult questions of state law to which the federal courts cannot give definitive answers arise every day in federal courts

throughout the land. Chief Justice Stone, in his opinion for the Court in *Meredith* v. *Winter Haven,* 320 U. S. 228, settled that this difficulty can never justify a failure to exercise jurisdiction. The Chief Justice said:

"But we are of opinion that the difficulties of ascertaining what the state courts may hereafter determine the state law to be do not in themselves afford a sufficient ground for a federal court to decline to exercise its jurisdiction to decide a case which is properly brought to it for decision.

"The diversity jurisdiction was not conferred for the benefit of the federal courts or to serve their convenience. Its purpose was generally to afford to suitors an opportunity in such cases, at their option, to assert their rights in the federal rather than in the state courts. In the absence of some recognized public policy or defined principle guiding the exercise of the jurisdiction conferred, which would in exceptional cases warrant its non-exercise, it has from the first been deemed to be the duty of the federal courts, if their jurisdiction is properly invoked, to decide questions of state law whenever necessary to the rendition of a judgment. . . . When such exceptional circumstances are not present, denial of that opportunity by the federal courts merely because the answers to the questions of state law are difficult or uncertain or have not yet been given by the highest court of the state, would thwart the purpose of the jurisdictional act." 320 U. S., at 234–235.

The cases are legion, since *Erie R. Co.* v. *Tompkins,* 304 U. S. 64, in which the federal courts have adjudicated diversity cases by deciding issues of state law, difficult and easy, without relevant state court decisions on the point in issue. And this Court has many times, often over dissents urging abstention, decided doubtful questions of state law when properly before us. *Propper* v.

*Clark,* 337 U. S. 472; *Commissioner* v. *Estate of Church,* 335 U. S. 632; *Estate of Spiegel* v. *Commissioner,* 335 U. S. 701; *Williams* v. *Green Bay & Western R. Co.,* 326 U. S. 549, 553–554; *Markham* v. *Allen,* 326 U. S. 490; *Risty* v. *Chicago, R. I. & P. R. Co.,* 270 U. S. 378; *McClellan* v. *Carland,* 217 U. S. 268.

The second possible reason explaining the Court's holding is that it reflects a distaste for the diversity jurisdiction. But distaste for diversity jurisdiction certainly cannot be reason to license district judges to retreat from their responsibility. The roots of that jurisdiction are inextricably intertwined with the roots of our federal system. They stem from Art. III, § 2 of the Constitution and the first Judiciary Act, the Act of 1789, 1 Stat. 73, 78.[5] I concede the liveliness of the controversy over the utility or desirability of diversity jurisdiction, but it has stubbornly outlasted the many and persistent attacks against it and the attempts in the Congress to curtail or eliminate it.[6] Until Congress speaks otherwise, the federal judiciary has no choice but conscientiously to render justice for litigants from different States entitled to have their controversies adjudicated in the federal courts. "Whether it is a sound theory, whether diversity jurisdiction is necessary or desirable in order to avoid possible unfairness by state courts, state judges and juries, against outsiders, whether the federal courts ought to be relieved of the burden of diversity litigation,—these are matters which are not my concern as a judge. They are the concern of those

---

[5] See, for a discussion of this subject, Friendly, The Historic Basis of Diversity Jurisdiction, 41 Harv. L. Rev. 483; Yntema and Jaffin, Preliminary Analysis of Concurrent Jurisdiction, 79 U. of Pa. L. Rev. 869, 873–876; Frank, Historical Basis of the Federal Judicial System, 13 Law & Contemp. Prob. 3, 22–28.

[6] See *Burford* v. *Sun Oil Co.,* 319 U. S. 315, 337–338 (dissenting opinion); Hart and Wechsler, The Federal Courts and the Federal System, 893–894.

whose business it is to legislate, not mine." *Burford* v. *Sun Oil Co.,* 319 U. S. 315, 337 (dissenting opinion).

Not only has the Court departed from any precedential basis for its action, but the decision encourages inefficiency in administration of the federal courts and leads to unnecessary delay, waste and added expense for the parties. This is particularly the stark truth in the instant case. The City of Thibodaux brought this proceeding in a Louisiana court to expropriate lands of the Power and Light Company for public purposes. The Power and Light Company, a Florida corporation, removed the action to the District Court, as was its privilege under 28 U. S. C. § 1441. The crucial issue in the case is whether Louisiana Act 111 of 1900 empowers the City to exercise the State's right of eminent domain.[7] Because the District Court rebuffed the City's plea to decide its authority under Act 111, and this Court sustains the District Court, the City must go back to the state court, not in the action originally

---

[7] The Act, now § 101 of Part III of Title 19 of the Louisiana Revised Statutes of 1950, provides in pertinent part:

"Any municipal corporation of Louisiana may expropriate any electric light, gas, or waterworks plant or property whenever such a course is thought necessary for the public interest by the mayor and council of the municipality. When the municipal council cannot agree with the owner thereof for its purchase, the municipal corporation through the proper officers may petition the judge of the district court in which the property is situated, describing the property necessary for the municipal purpose, with a detailed statement of the buildings, machinery, appurtenances, fixtures, improvements, mains, pipes, sewers, wires, lights, poles and property of every kind, connected therewith, and praying that the property described be adjudged to the municipality upon payment to the owner of the value of the property plus all damages sustained in consequence of the expropriation. Where the same person is the owner of both gas, electric light, and water works plants, or of more than one of any one kind of plant, the municipal corporation may not expropriate any one of the plants without expropriating all of the plants owned by the same person."

brought there by the City, but in a new action to be initiated under Louisiana's declaratory judgment law. The Power and Light Company, which escaped a state court decision by removing the City's action to the District Court, is now wholly content with the *sua sponte* action of the District Court. This is understandable since the longer decision is put off as to the City's power to expropriate its property, the longer the Power and Light Company will enjoy the possession of it. Resolution of the legal question of the City's authority, already delayed over two years due to no fault of the City, will be delayed, according to the City's estimate in its brief, a minimum of two additional years before a decision may be obtained from the State Supreme Court in the declaratory judgment action. Even if the City obtains a favorable decision, the City must suffer still further delay while the case comes back to the District Court for a decision upon the amount of damages to be paid the Power and Light Company. Thus at best the District Court will finally dispose of this case only after prolonged delay and considerable additional expense for the parties. Moreover, it is possible that the State Supreme Court will, for one reason or another, conclude that it will not render the parties this advisory opinion. All of this delay should have been avoided, and would have been, had the District Court performed what I think was its plain duty, and decided the question of the City's power when that question was ripe for decision a few months after the case was removed to the District Court. I think it is more than coincidence that both in this case and in *Mashuda* the party supporting abstention is the one presently in possession of the property in question. I cannot escape the conclusion in these cases that delay in the reaching of a decision is more important to those parties than the tribunal which ultimately renders the decision. The Court today upholds a procedure which encourages such delay

44

and prevents "that promptness of decision which in all judicial actions is one of the elements of justice." *Forsyth* v. *Hammond,* 166 U. S. 506, 513. One must regret that this Court's departure from the long-settled criteria governing abstention should so richly fertilize the Power and Light Company's strategy of delay which now has succeeded, I dare say, past the fondest expectation of counsel who conceived it. It is especially unfortunate in that departure from these criteria fashions an opening wedge for District Courts to refer hard cases of state law to state courts in even the routine diversity negligence and contract actions.

I would affirm the judgment of the Court of Appeals.