**R. N. KELLY COTTON MERCHANT, INC., Plaintiff,**

v.

**Kenneth YORK et al., Defendants.**

**Civ. A. No. 861.**

United States District Court, M. D. Georgia, Athens Division.

Oct. 18, 1973.

Eugene A. Epting, Erwin, Epting, Gibson & Chilivis, Athens, Ga., for plaintiff.

Robert M. Heard, E. Freeman Leverett, Elberton, Ga., for defendants.

OWENS, District Judge.

Plaintiff, a South Carolina corporation with its principal place of business in Anderson, South Carolina, seeks by its complaint to have certain contracts for the purchase of cotton [Exhibits "A", "B", "C" and "D"] declared valid and specifically enforced. Defendants are farmers who reside in Hart County, Georgia; they have responded and counterclaimed for a declaratory judgment declaring the contracts invalid and unenforceable. See 28 U.S.C. § 2201.

The case came on for a hearing on October 12, 1973, on plaintiff's motion for a preliminary injunction. Following presentation of evidence and argument of legal issues, counsel for all parties agreed that the case was ripe for final decision on the merits. See Rule 65(a)(2), Federal Rules of Civil Procedure. This constitutes the court's findings of facts and conclusions of law. See Rules 52(a), 65(d), Federal Rules of Civil Procedure.

There is complete diversity of citizenship between the parties, the amount in controversy far exceeds $10,000.00, exclusive of interest and costs and this court thus has jurisdiction. Title 28 U.S.C. § 1332.

Plaintiff made a contract with each of the defendants in March 1973 to purchase cotton which each of the defendants would grow this year. It is undisputed that Exhibits "A", "B", "C" and "D" are true copies of documents which were in fact executed by the respective parties. Defendants have, however, raised several defenses to this action brought to enforce these contracts.

Defendants contend that plaintiff cannot bring this action because plaintiff is not registered to do business in Georgia, that the contracts are too vague to be enforced, that the contracts are invalid under Ga.Code § 20–602, and that the contracts are invalid because the

cotton which was the subject matter of the sale was not in existence at the time the contracts were made. Defendants also contend that this court should abstain from deciding this case pending a final adjudication of similar actions now pending in the courts of the State of Georgia.

■ The issues of Georgia law presented by this case do not appear so ambiguous or so critical to the public policy of the state that abstention would be appropriate. See Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959); United Services Life Ins. Co. v. Delaney, 328 F.2d 483 (5th Cir. 1964). Therefore, defendants' motion that this court abstain from deciding this case on its merits is hereby denied.

Defendants assert that under the law of Georgia, the plaintiff, being a foreign corporation not registered to do business in Georgia, may not bring suit in Georgia to enforce these contracts.

■■ The capacity of a corporation to bring suit in a federal district court is determined by the law of the state of its incorporation. Rule 17(b), Federal Rules of Civil Procedure. Plaintiff herein is incorporated under the laws of the State of South Carolina. None of the parties contends that the corporate law of South Carolina does not allow a corporation the power to sue. Thus plaintiff has the capacity to bring suit in this court.

■ The court's jurisdiction over this action is based upon the diversity of citizenship of the parties. Therefore, plaintiff may not assert substantive rights in this court which it may not assert in the courts of Georgia. Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949); 3A Moore's Federal Practice ¶ 17.21, p. 772. Under Georgia law a foreign corporation which is not registered to do business within the state, may sue in the courts of Georgia so long as it is not transacting business within the meaning of the Georgia Corporation Code. Ga. Code Ann. §§ 22–1401, 22–1421; Tankersley v. Security National Corp., 122 Ga.App. 129, 176 S.E.2d 274 (1970). The purchase of cotton by plaintiff from the defendant farmers in the manner shown by the evidence is not transacting business such as to require registration in Georgia. Ga.Code Ann. § 22–1401 (b). Therefore, plaintiff may bring this action in this court in order to enforce the contracts in question without registering to do business in Georgia.

The next question before the court is whether under Georgia law the contracts in question are valid and enforceable.

■ Defendants first contend that under Georgia law a contract for the future sale of cotton must meet the requirements of Ga.Code § 20–602 in order to be valid.

Ga.Code § 20–602 is a codification of Ga.Laws 1929, p. 245, which was itself a successor statute to a statute enacted in 1906. The 1929 statute declared legal certain normal brokerage operations which were illegal under the former statute. See Layton v. State, 165 Ga. 265, 140 S.E. 847 (1927). Neither the 1906 statute nor present Georgia Code § 20–602 affect the validity of contracts for the future delivery of cotton where the parties contemplate that there shall be actual delivery of the cotton. *Layton, supra,* at 276, 140 S.E. 847; Fenner & Beane v. Calhoun, 56 Ga.App. 823, 194 S.E. 51 (1937).

It is clear from the testimony of the parties that actual delivery of cotton was contemplated at the time the contracts in question were executed. Defendants do not contend otherwise. Therefore, the contracts in question are not invalid under Ga.Code § 20–602.

Defendants also contend that the contracts are invalid because they are too indefinite as to subject matter and because the cotton in question was not in existence at the time the contracts were executed.

■■ A contract to sell a future cotton crop is a sale of goods within the scope of Article 2 of Georgia's enactment of the Uniform Commercial Code. Ga.Code Ann. §§ 109A–2–102, 109A–2–105(1), 109A–2–105(2), 109A–2–106(1), 109A–2–107(2). Under the Uniform Commercial Code a sales contract exists if the evidence shows that the parties intended that there be a contract, and "there is a reasonable basis for giving an appropriate remedy." Ga. Code Ann. § 109A–2–204. The written contracts, on their face, show clearly that the parties intended to enter into contracts for the sale of cotton. Furthermore, the testimony of all of the parties indicated that each intended to make a binding contract for the sale of cotton at the time the contracts were executed. Thus, it is clear that contracts for the sale of cotton were formed regardless of whether the cotton had in fact been planted at the time of execution.

■ The description of the cotton covered by each contract is not so vague as to render the contracts unenforceable under the code. The code provides that the terms of a written agreement may be explained or supplemented by course of dealings, usage of trade or course of performance. Ga.Code Ann. §§ 109A–2–202, 109A–1–205, 109A–2–208. In essence, Ga.Code Ann. § 109A–2–202 requires courts to apply to contracts the meaning intended by the parties. Warren's Kiddie Shoppe, Inc. v. Casual Slacks, Inc., 120 Ga.App. 578, 171 S.E.2d 643 (1969).

Each of the defendants testified that his entire cotton crop for 1973 was approximately the same number of acres as that described in his contract. Defendant Kenneth York testified that by signing the contract in March 1973, he had intended to contract his entire cotton crop for this year. Thus, it appears that by the contracts in question, each defendant sold his entire cotton crop for the year 1973 to R. N. Kelly Cotton Merchant, Inc. This holding in no way contradicts or modifies any of the terms of the written agreements.

■ The Court further notes that the Uniform Commercial Code places upon parties to contracts an obligation of good faith performance. Ga.Code Ann. §§ 109A–1–203, 109A–2–301.

The contracts are, therefore, hereby declared valid and enforceable.

■ The evidence at the trial of this case showed that at the time these contracts were executed the contract price for the cotton was in line with the market price of cotton. The evidence further showed that plaintiff has in turn obligated itself to deliver to Blair Mills, Inc. in Belton, South Carolina, the cotton in question. [Exhibit "E"]. His markup on the cotton was not excessive. The evidence further shows that Blair Mills has relied upon this contract with plaintiff in making contracts to sell cotton goods to others.

It is a matter of public record that the price of cotton has nearly tripled in recent months. Failure of these defendants to abide by their agreements would cause irreparable injury to plaintiff and to others in the stream of commerce. Thus, injunctive relief is most appropriate in this case.

Each of the named defendants is enjoined from violating the plain, unambiguous terms of their contracts which plainly call for defendants in accordance with usual good farming practice, to pick their cotton when it is ready to be picked, and to deliver said cotton to the Temple Gin Company, Inc. of Hart County, Georgia.

Plaintiff is directed to promptly and fully pay defendants for said cotton after it has been ginned, baled and graded.

This permanent injunction shall issue upon the giving of security by plaintiff in the amount of $5,000.00 for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

So ordered.

[See following illustrations]

## Exhibit A
### SALE & PURCHASE AGREEMENT

THIS CONTRACT made and entered into this 6th day of  March 1973         .
By and Between  Kenneth York            hereinafter referred to as the
Seller, and R. N. Kelly Cotton Merchant, Inc. hereinafter referred to
as the Buyer.

WITNESSETH:

1. On the terms and conditions and at prices hereinafter stated, the Seller
agrees to sell, and the Buyer agrees to buy all and only the cotton produced
by seller during the crop year 1973 on approximately 310 acres situated
in Hart County, Hartwell, Ga. , Farm No.                        .

2. This contract is for the sale and purchase of all cotton produced on the
above-described acreage eligible for the 1973 Government Loan as determined
by USDA Official Government Class (Original USDA Official Government Class
to be final) EXCEPT: Cotton picked up from the ground by machine or other-
wise, and stripper cotton; also, any false-packed, water-packed, or re-packed
reginned or oily cotton will not be accepted. All cotton eligible under
this contract must be hand picked or spindle picked.

3. Seller agrees to practice normal, good farming methods in the production
and harvesting of the crop, to defoliate before machine picking and to har-
vest and gin as fast as practicable after maturity. Buyer has the privilege
of controlling within reason the amount of heat and cleaning equipment to be
used in ginning the cotton. Seller agrees further to cooperate in harvesting
handling and ginning the .cotton. Cut-off date is 12-16-73 and cotton must be
in warehouse on or before 12-16-73        .

4. The prices shall be as follows:  (All cotton eligible for Govt. Loan)

        28.50¢   per pound net weights, for cotton with a micronaire
                 of  3.3 thru 5.2                    ￮

        27.50¢   per pound net weights for cotton with a micronaire
                 of  5.3 & higher               .

        27.50¢   per pound net weights for cotton with a micronaire
                 of  3.0 thru 3.2               .
100 points down from above prices
depending on micronaire per pound net weights for cotton reduced on account
                 of grass, or bark, or any extraneous matter.

5. Cotton is to be billed on gin weights with official USDA class cards
attached to show the grade, staple and micronaire.

6. Cotton will be invoiced on net weights.

7. Should the seller or the buyer fail or refuse to comply with this con-
tract , the other party shall promptly take necessary action to enforce
the contract.

8. Cotton Research and Promotion Fee is for account of the seller and is to
be collected at time of invoicing.

9. On cotton covered by the contract, one set of samples is to be sent
direct from the gin to the USDA classing office. Another set of samples
is to be sent direct from the gin to the buyer.

10. We, the seller and the buyer, have carefully read and fully under-
stand the terms and provisions of the foregoing contract, which represents
the entire agreement between the parties, and we understand there may be no
modification of this agreement except in writing.

WITNESS our signatures on this the 6th day of March 1973.         .

STATE OF GEORGIA
HART SUPERIOR COURT
Filed   September 14 19 73
At  1:00 P.  M
Recorded in Book    120
Page   339
        September 14 1973
Frank H Martin
        gm   Clerk

R. N. Kelly Cotton Merchant, Inc.
BY:
        _____ (Buyer)
Kenneth York (Seller)

## Exhibit B

### SALE & PURCHASE AGREEMENT

THIS CONTRACT made and entered into this 6th day of March 1973
By and Between L. M. York                    hereinafter referred to as the
Seller, and R. N. Kelly Cotton Merchant, Inc. hereinafter referred to
as the Buyer.

WITNESSETH:

1. On the terms and conditions and at prices hereinafter stated, the Seller
agrees to sell, and the Buyer agrees to buy all and only the cotton produced
by seller during the crop year 1973 on approximately 600 acres situated
in Hart County, Hartwell, Ga. , Farm No.                                   •

2. This contract is for the sale and purchase of all cotton produced on the
above-described acreage eligible for the 1973 Government Loan as determined
by USDA Official Government Class (Original USDA Official Government Class
to be final) EXCEPT: Cotton picked up from the ground by machine or other-
wise, and stripper cotton; also, any false-packed, water-packed, or re-packe
reginned or oily cotton will not be accepted. All cotton eligible under
this contract must be hand picked or spindle picked.

3. Seller agrees to practice normal, good farming methods in the production
and harvesting of the crop, to defoliate before machine picking and to har-
vest and gin as fast as practicable after maturity. Buyer has the privilege
of controlling within reason the amount of heat and cleaning equipment to be
used in ginning the cotton. Seller agrees further to cooperate in harvesting
handling and ginning the cotton. Cut-off date is 12-**-73* and cotton must be
in warehouse on or before 12-**-73.            •

4. The prices shall be as follows:  (All cotton eligible for Govt. Loan)

    28.50¢      per pound net weights, for cotton with a micronaire
                  of  3.3 thru 5.2            •

    27.50¢      per pound net weights for cotton with a micronaire
                  of  5.3 & higher            •

    27.50¢      per pound net weights for cotton with a micronaire
                  of  3.0 thru 3.2            •

100 points down from above prices
depending on micronaire per pound net weights for cotton reduced on account
                  of grass, or bark, or any extraneous matter.

\* ~~Balance~~ ~~classific~~ ~~100 points~~ ~~the government~~ ~~loan~~
~~of 22 cents~~            •

5. Cotton is to be billed on gin weights with official USDA class cards
attached to show the grade, staple and micronaire.

6. Cotton will be invoiced on net weights.

7. Should the seller or the buyer fail or refuse to comply with this con-
tract , the other party shall promptly take necessary action to enforce
the contract.

8. Cotton Research and Promotion Fee is for account of the seller and is to
be collected at time of invoicing.

9. On cotton covered by the contract, one set of samples is to be sent
direct from the gin to the USDA classing office. Another set of samples
is to be sent direct from the gin to the buyer.

10. We, the seller and the buyer, have carefully read and fully under-
stand the terms and provisions of the foregoing contract, which represents
the entire agreement between the parties, and we understand there may be no
modification of this agreement except in writing.

WITNESS our signatures on this the 6th day of March 1973.            •

STATE OF GEORGIA
HART SUPERIOR COURT

Filed September 14, 1973

At 1:00 P. M

Recorded in Book    120

Page   340

September 14, 1973

Frank H Martin

R. N. Kelly Cotton Merchant, Inc.
BY:
_____ (Buyer)

L. M. York (Seller)

## Exhibit C

### SALE & PURCHASE AGREEMENT

THIS CONTRACT made and entered into this 6th day of March 1973
By and Between Hugh D. McLane hereinafter referred to as the
Seller, and R. N. Kelly Cotton Merchant, Inc. hereinafter referred to
as the Buyer.

WITNESSETH:

1. On the terms and conditions and at prices hereinafter stated, the Seller
agrees to sell, and the Buyer agrees to buy all and only the cotton produced
by seller during the crop year 1973 on approximately 450 acres situated
in Hart County, Hartwell, Ga., Farm No. _____.

2. This contract is for the sale and purchase of all cotton produced on the
above-described acreage eligible for the 1973 Government Loan as determined
by USDA Official Government Class (Original USDA Official Government Class
to be final) EXCEPT: Cotton picked up from the ground by machine or other-
wise, and stripper cotton; also, any false-packed, water-packed, or re-packed
reginned or oily cotton will not be accepted. All cotton eligible under
this contract must be hand picked or spindle picked.

3. Seller agrees to practice normal, good farming methods in the production
and harvesting of the crop, to defoliate before machine picking and to har-
vest and gin as fast as practicable after maturity. Buyer has the privilege
of controlling within reason the amount of heat and cleaning equipment to be
used in ginning the cotton. Seller agrees further to cooperate in harvesting
handling and ginning the cotton. Cut-off date is 12-15-73 * and cotton must be
in warehouse on or before 12-15-73. .

4. The prices shall be as follows: (All cotton eligible for Govt. Loan)

    28.50¢      per pound net weights, for cotton with a micronaire
                     of 3.3 thru 5.2 .

    27.50¢      per pound net weights for cotton with a micronaire
                     of 5.3 & higher .

    27.50¢      per pound net weights for cotton with a micronaire
                     of 3.0 thru 3.2 .

100 points down from above prices
depending on micronaire per pound net weights for cotton reduced on account
                     of grass, or bark, or any extraneous matter.

5. Cotton is to be billed on gin weights with official USDA class cards
attached to show the grade, staple and micronaire.

6. Cotton will be invoiced on net weights.

7. Should the seller or the buyer fail or refuse to comply with this con-
tract , the other party shall promptly take necessary action to enforce
the contract.

8. Cotton Research and Promotion Fee is for account of the seller and is to
be collected at time of invoicing.

9. On cotton covered by the contract, one set of samples is to be sent
direct from the gin to the USDA classing office. Another set of samples
is to be sent direct from the gin to the buyer.

10. We, the seller and the buyer, have carefully read and fully under-
stand the terms and provisions of the foregoing contract, which represents
the entire agreement between the parties, and we understand there may be no
modification of this agreement except in writing.

WITNESS our signatures on this the 6th day of March 1973. .

STATE OF GEORGIA
HART SUPERIOR COURT

Filed September 14, 1973

At 1:00 P.M.

Recorded in Book 120

Page 341 of .

September 14, 1973

Frank H Martin
         Clerk

R. N. Kelly Cotton Merchant, Inc.
BY: _____ (Buyer)

_____ (Seller)

## Exhibit D

### SALE & PURCHASE AGREEMENT

THIS CONTRACT made and entered into this 6th day of March, 1973
By and Between Charles Cheek                    hereinafter referred to as the
Seller, and R. N. Kelly Cotton Merchant, Inc. hereinafter referred to
as the Buyer.

WITNESSETH:

1. On the terms and conditions and at prices hereinafter stated, the Seller
agrees to sell, and the Buyer agrees to buy all and only the cotton produced
by seller during the crop year 1973 on approximately 315 acres situated
in Hart County, Hartwell, Ga., Farm No.                              .

2. This contract is for the sale and purchase of all cotton produced on the
above-described acreage eligible for the 1973 Government Loan as determined
by USDA Official Government Class (Original USDA Official Government Class
to be final) EXCEPT: Cotton picked up from the ground by machine or other-
wise, and stripper cotton; also, any false-packed, water-packed, or re-packed
reginned or oily cotton will not be accepted. All cotton eligible under
this contract must be hand picked or spindle picked.

3. Seller agrees to practice normal, good farming methods in the production
and harvesting of the crop, to defoliate before machine picking and to har-
vest and gin as fast as practicable after maturity. Buyer has the privilege
of controlling within reason the amount of heat and cleaning equipment to be
used in ginning the cotton. Seller agrees further to cooperate in harvesting
handling and ginning the cotton. Cut-off date is 12-15-73 and cotton must be
in warehouse on or before 12-16-73.                    .

4. The prices shall be as follows: (All cotton eligible for Govt. Loan)

   28.50¢                 per pound net weights, for cotton with a micronaire
                          of 3.3 thru 5.2                    .

   27.50¢                 per pound net weights for cotton with a micronaire
                          of 5.3 & higher          .

   27.50¢                 per pound net weights for cotton with a micronaire
                          of 3.0 thru 3.2              .
100 points down from above prices
depending on micronaire per pound net weights for cotton reduced on account
                          of grass, or bark, or any extraneous matter.
* Balance of cotton at 100 points over the government loan price after
  cutoff date of 12-15-73.                           .

5. Cotton is to be billed on gin weights with official USDA class cards
attached to show the grade, staple and micronaire.

6. Cotton will be invoiced on net weights.

7. Should the seller or the buyer fail or refuse to comply with this con-
tract , the other party shall promptly take necessary action to enforce
the contract.

8. Cotton Research and Promotion Fee is for account of the seller and is to
be collected at time of invoicing.

9. On cotton covered by the contract, one set of samples is to be sent
direct from the gin to the USDA classing office. Another set of samples
is to be sent direct from the gin to the buyer.

10. We, the seller and the buyer, have carefully read and fully under-
stand the terms and provisions of the foregoing contract, which represents
the entire agreement between the parties, and we understand there may be no
modification of this agreement except in writing.

WITNESS our signatures on this the 6th day of March 1973              .

STATE OF GEORGIA
HART SUPERIOR COURT                     R. N. Kelly Cotton Merchant, Inc.
                                        BY:
Filed September 14, 19 73                         _____ (Buyer)
At 1:00 P.M                                       _____ (Seller)
Recorded in book 120
Page 342
       September 14, 19 73
       Frank H. Martin
              Clerk