See also, D.C., 474 F.Supp. 511.

Henry ANDERSON et al., Plaintiffs,

v.

Walter REDMAN et al., Defendants.

Civ. A. No. 76–364.

United States District Court,
D. Delaware.

Nov. 28, 1979.

Gary A. Myers, and H. William Schab, Jr., Community Legal Aid Society, Inc., Georgetown, Del., for plaintiffs.

John A. Parkins, Jr., and John J. Polk, Asst. Attys. Gen., Dept. of Justice, Wilmington, Del., for defendants.

Bertram S. Halberstadt, Biggs & Battaglia, Wilmington, Del., for defendant Redman in his individual capacity.

OPINION

MURRAY M. SCHWARTZ, District Judge.

Defendants, officials of the Delaware Department of Corrections, have presented a

motion to vacate this Court's Order of February 17, 1977, as modified on May 17, 1978. This Order required, *inter alia*, that defendants limit the inmate population of the Delaware Correctional Center ("DCC") to the "design capacity" of that institution. The Order was based solely on this Court's finding that the conditions of confinement at DCC violated State statutory law. Although these conditions were also challenged on state and federal constitutional grounds, the Court found it unnecessary to reach these issues. *Anderson v. Redman*, 429 F.Supp. 1105, 1122 (D.Del.1977).

On June 8, 1979 the Governor of Delaware signed into law House Bill 495 ("H.B. 495").[1] This law expressly refers to this Court's Order and was designed to prevent the Court from enforcing limits on the inmate population in the State of Delaware based upon violations of Delaware statutory law. Defendants now move to vacate the Court's Order, claiming that H.B. 495 has undercut the basis of that Order. Plaintiffs desire to challenge the constitutionality of H.B. 495 under the Delaware Constitution. Specifically, it is claimed that H.B. 495 violates Article I, § 11 of that Constitution which reads, in pertinent part: "[I]n the construction of jails a proper regard shall be had to the health of prisoners."[2] Plaintiffs have indicated a desire to challenge H.B. 495 on this ground in State court and urge this Court to *stay* its Order pending resolution of a State court action. Defendants agree that this Court should not decide the challenge to H.B. 495[3] under Article I, § 11 of the Delaware Constitution, but continue to urge that the Order be *vacated*. For the reasons set forth below, the Court will Order the plaintiff to litigate all bases for their Delaware State constitutional challenge to H.B. 495 in the Delaware courts and will stay its February 17, 1977 Order as amended pending that resolution in State court.

## I. *Abstention*

The Court is convinced that the State constitutional challenge to H.B. 495 posed by plaintiffs should properly be addressed by the Delaware State courts. H.B. 495 is a recently enacted law; its validity has not yet been determined by any court. Moreover, this Court has not been cited to, nor has it found, any case in which the Delaware courts have interpreted the "health of prisoners" constitutional provision. There can be no doubt then that this issue is one of unclear State law.

As noted above, this Court expressly declined to reach the federal constitutional issues in its 1977 Opinion and Order. While defendants contend that changes within the Delaware Department of Corrections have mooted these claims, this need not be determined at this time. It is sufficient to note that in the Court's view, these claims are not insubstantial, so that this Court can continue to exercise pendent jurisdiction over the plaintiffs' State law claims.

Should plaintiffs prevail in the State court, this Court's Order, based on State statutory law, would remain in effect, thus obviating the need to reach the federal constitutional claims. On the other hand, should plaintiffs fail in their effort to overturn H.B. 495, the Court would then have to determine whether to entertain the chal-

1. H.B. 495 is codified at 62 Del.Laws, Chapter 61.

2. It is unclear whether plaintiffs also wish to challenge H.B. 495 under Article I, § 11's "cruel punishments" clause. If so, this challenge will have to be presented in State court. *See infra.*

3. It would appear that this Court has jurisdiction to entertain a challenge to the validity of H.B. 495. *See Pennsylvania v. Wheeling & Belmont Bridge Company*, 18 How. (59 U.S.) 421, 15 L.Ed. 497 (1856). In that case the Supreme Court rendered inoperative a prior decree enjoining the continuation of a bridge

over the *Ohio River* as a public nuisance because the project was an unlawful obstruction to the public right of free navigation. Subsequently, Congress passed a statute declaring the bridge to be a lawful structure. The Court then held that this statute was valid and vacated its prior order. Thus, it would appear that before vacating its Order in this case, this Court would have to address the constitutional challenges to H.B. 495 raised by plaintiffs. The Court has concluded, however, that it should abstain on this issue and defer its resolution to the State courts. *See infra.*

lenge to the conditions as they existed at the time of trial in 1976, or to determine whether the conditions in existence following the State court proceedings violate the United States Constitution.[4] It is well established that abstention by a federal court is proper where a State court determination of an unclear issue of State law might moot a federal constitutional issue or put the case in a different posture. *See, e. g., Railroad Commission of Texas v. Pullman Company,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Louisiana Power & Light Company v. City of Thibodeaux,* 360 U.S. 25, 32–33, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) (Brennan, J., dissenting). *See generally,* Field, *The Abstention Doctrine Today,* 125 U.Pa. L.Rev. 590 (1977).

Aside from the presence of a federal constitutional issue, abstention is proper here so as to avoid the possibility of an erroneous decision of a State law issue which could have a serious and unnecessary effect upon the administration of the State's penal policies. For example, if this Court were to hold H.B. 495 to be unconstitutional and enforce its 1977 Order, and if the Delaware courts later reach the opposite conclusion, this Court will have unnecessarily interfered with the State's policy as reflected in H.B. 495. The Delaware Legislature has clearly expressed its views on the matter of inmate population, and it is for the Delaware judiciary to determine the validity of this action. Abstention on this ground of comity with the states—avoiding a result in "needless friction with State policies"—has been sanctioned. *Pullman, supra,* 312 U.S.

at 500, 61 S.Ct. 643; *Thibodeaux, supra,* 360 U.S. at 33, 79 S.Ct. 1070 (Brennan, J., dissenting); *Alabama Public Service Commission v. Southern Railway Company,* 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951). *See Field, supra,* at 608–09.

Thus this Court orders plaintiffs to institute an action in the Delaware State courts challenging the validity of H.B. 495 under Article I, § 11 of the Delaware Constitution. *All* challenges to H.B. 495, facial as well as applied, must be presented, so that upon final resolution of the State court litigation, this Court can determine the appropriate course of action with regard to the pending federal claims.

## II. Effect of Abstention on This Court's Order

This Court agrees with both parties that its order should not remain in effect for the duration of the State constitutional challenge. The Court recognizes that the Supreme Court has held that even though the constitutionality of the statute upon which an injunction has been issued is challenged, "disobedience of such an outstanding order of a federal court subjects the violator to contempt even though his constitutional claim might be later upheld." *United States v. United Mine Workers,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947). The Supreme Court has subsequently ruled that when those subject to the command of an injunctive order seek to modify that order, they are entitled to obtain a definitive disposition of their objections to the order. *Pasadena City Board of Education v. Span-*

---

4. Plaintiffs' counsel represented at oral argument that he might wish to present a federal constitutional challenge to the conditions at DCC prior to the resolution of the State court litigation should, in his view, conditions rise to the level of cruel and unusual punishment. This Court takes judicial notice of the fact that the Delaware State court system, having established control over its criminal docket, has been able to turn its attention to its civil litigation backlog and that the Delaware Supreme Court is, for all intents and purposes, current. The issue of plaintiffs' right to present their federal claims to this Court before the State court litigation is concluded should not arise if the parties move expeditiously in State court.

Should the issue arise despite the efforts of the parties, it will be treated at that time. It is noted, however, that the Supreme Court has held that a stay of the federal suit pending determination of the State-law questions in State court is the proper course in ordering "*Pullman* abstention." *Harris County Commissioners Court v. Moore,* 420 U.S. 77, 88 n.14, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975). Litigation of the federal constitutional claims before the State courts have ruled on the validity of H.B. 495 would be contrary to the philosophy of abstention—avoiding the decision of federal constitutional issues by ordering litigation of unclear issues of State law.

*gler,* 427 U.S. 424, 96 S.Ct. 2697, 49 L.Ed.2d 599 (1976). Either staying or vacating the Order in this matter would enable defendants to obtain a definitive disposition of their claim, through the State court litigation, without subjecting them to contempt while the validity of this Court's Order, in light of H.B. 495, is being tested.

Defendants seek a vacation of this Court's Order, while plaintiffs urge the Court to stay its Order. The primary effect of both routes is to free defendants from the possibility of being subjected to contempt during the pendency of the State litigation. The only major difference between the two schemes is with regard to the burden of reinstating the Order should H.B. 495 be struck down. If the Order is stayed, plaintiffs will be able to seek contempt as soon as the stay is lifted and defendants would then carry the burden of establishing a defense to a contempt order based upon H.B. 495.[5] Defendants object to this scheme and urge a vacation, in which case plaintiffs would have to seek leave of the Court to reinstate the Order. Defendants contend that this is the proper way to proceed for, in their view, plaintiffs should carry the burden of establishing a right to injunctive relief. The Court is of the view that the burden properly rests with the defendants and therefore a stay will be ordered. Plaintiffs have already established their right to injunctive relief. Defendants now seek to lift that Order because of H.B. 495; they carry the burden of establishing that H.B. 495 indeed warrants such action. Similarly, they should carry this burden upon lifting of the stay should that be appropriate following resolution of the State law issue.

An order will be entered directing plaintiffs to litigate all challenges to H.B. 495 based upon Article I, § 11 of the Delaware Constitution in the Delaware courts and staying this Court's February 1977 Order as amended until 90 days after the ultimate resolution of the State court litigation.[6]

---

5. Defendants argue that not all of H.B. 495 can be challenged by the plaintiffs. Plaintiffs appear to agree with this, although there is some question as to whether any remaining valid portions of H.B. 495 would affect this Court's Order.

6. This additional time will enable defendants to conform to the Court's Order in the event that H.B. 495 is declared invalid. The Court does not deem it fair to subject the defendants to contempt the moment a final State court decision issues, should that decision be adverse to defendants.