**KESSLER INSTITUTE FOR REHABILITATION, INC., in its own right and for and on behalf of its employees and patients; Sally Tannenbaum, Legal Guardian of Heather Benney; Heather Benny and United Association for Handicapped Persons, Inc., Plaintiffs,**

v.

**MAYOR AND COUNCIL OF the BOROUGH OF ESSEX FELLS, a municipality, and Borough of Essex Fells, Defendants.**

Civ. A. No. 94–2361(WGB).

United States District Court,
D. New Jersey.

Jan. 31, 1995.

Lindabury, McCormick & Estabrook by Donald F. Nicolai, Jay Lavroff, Westfield, NJ, for plaintiffs.

Lum, Hoens, Conant, Danzis & Kleinberg by Dennis J. Drasco, Kevin J. O'Connor, Roseland, NJ, for defendants.

## OPINION

BASSLER, District Judge:

Plaintiff, Kessler Institute for Rehabilitation, Inc. ("Kessler"), operates a health care facility for disabled persons in West Orange, New Jersey. In addition, Kessler owns a 12.5 acre tract of land, located a few miles away from its current facility and in the Borough of Essex Fells, New Jersey. Kessler purchased the site for construction of a second facility, to be used as a transitional

residence for disabled persons and a skilled nurse training facility.

The property that Kessler intended to use to expand its services to disabled persons is now the subject of a condemnation action filed by the Borough of Essex Fells in New Jersey Superior Court, Law Division, Essex County. The condemnation action was authorized by a municipal ordinance, enacted on May 17, 1994, pursuant to the New Jersey Eminent Domain Act, N.J.S.A. 20:3–1, *et seq.* and the New Jersey Local Lands and Building Law 40A:12–1 *et seq.*

Plaintiff, Salley Tannenbaum, is the legal guardian for Plaintiff, Heather Benney, a disabled person who is allegedly a "candidate" for treatment at Kessler's proposed facility if and when it is constructed. Compl. ¶ 5. Plaintiff, the United Association for Handicapped Persons ["UAFHP"] is a non-profit organization dedicated to advocacy and support for Handicapped Persons in New Jersey. Compl. ¶ 6.

On May 18, 1994, Plaintiffs initiated this action claiming that Defendants' enactment of the ordinance authorizing condemnation of Kessler's property discriminated against disabled persons and/or those who associate with them in violation of the following laws: the equal protection clauses of the state and federal constitutions, the Fair Housing Act, the Americans with Disabilities Act, and the New Jersey Law Against Discrimination.

This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 (general federal question jurisdiction), 28 U.S.C. § 1343 (jurisdiction over civil rights actions), and 42 U.S.C. § 3613 (jurisdiction over housing discrimination claims). The Court has supplemental jurisdiction over Plaintiffs' New Jersey constitutional and statutory claims pursuant to 28 U.S.C. § 1367.

Defendants have moved to dismiss all of Plaintiffs' claims on three alternative grounds: (1) lack of standing; (2) abstention; and (3) failure to state a claim upon which relief can be granted.

For the reasons set forth in this Opinion, Defendants' motion is **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

On this motion to dismiss, the Court must accept all of Plaintiffs' factual allegation as true. *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). According to the Plaintiffs, the history of the property at issue in the state condemnation proceeding reflects the Defendants' intentional discrimination against persons with disabilities. Before Kessler purchased the property, it was owned by the Northeastern Bible College, which graduated its last class and offered the property for sale in the summer of 1990. Compl. ¶ 10. On August 12, 1991, the Borough purchased a soccer field, totaling approximately three acres from the Bible College. Compl. ¶ 11.

According to the Plaintiffs, the Borough never made any attempt to purchase the balance of the property from the Bible College. *See* Compl. ¶ 12. The property remained for sale until May 26, 1992, when Kessler contracted to purchase the property. Compl. ¶ 12.

Kessler intended to construct a new facility on the site, a few miles away from its existing facility, in order to expand its services to disabled persons. Compl. ¶ 13. The New Jersey Department of Health issued a Certificate of Need to Kessler for a 20 bed transitional living facility for disabled persons and a 60 bed skilled nursing facility to be established on the former Bible College site. Compl. ¶ 14.

Since the property was zoned for educational use, Kessler appeared before the Borough Planning Board, seeking an amendment to the Borough's zoning ordinance to permit construction of the proposed facility. Compl. ¶¶ 15–16. While this matter was pending, on October 23, 1992, the sale contract between Kessler and the Bible College became final. Compl. ¶ 19.

In order to evaluate Kessler's request to amend the zoning ordinance, Defendants, the Borough, Mayor, and Council of Essex Fells, retained the services of planning and legal experts to evaluate the suitability of the site for Kessler's proposed facility. Compl. ¶ 20.

According to the Plaintiffs, the planning and legal experts found that Kessler's pro-

posed use of the property to provide services to disabled persons was consistent with the goals set forth in Essex Fells' master plan and zoning ordinances. Compl. ¶ 21. Moreover, Plaintiffs allege that at a subsequent Borough Council meeting, the Mayor stated that the Borough did not believe that any municipal use for existed for Kessler's property. Compl. ¶ 21. Consequently, the Mayor directed the legal and planning experts to draft an amendment to the zoning ordinance to permit construction of Kessler's proposed facility. Compl. ¶ 21. The amendment was scheduled to be presented for consideration at a public hearing on October 5, 1993. Compl. ¶ 21.

At the public hearing, Plaintiffs contend that Kessler was "heckled" by Essex Fells residents, who made several comments evidencing discriminatory animus against disabled persons and those who serve them, including: "We don't want our children to see people in wheelchairs" and "Go back to West Orange". Compl. ¶ 22. Rather than submit the zoning amendment to the Council as originally planned, the Mayor and Council decided to send a questionnaire to all Borough residents. Compl. ¶ 22.

The questionnaire, mailed on October 19, 1993, asked Borough residents whether they would be willing to pay higher taxes in order to acquire Kessler's property, either through negotiation or condemnation, for the alleged public purpose of maintaining a park and/or open space. Compl. ¶ 24. When the questionnaire was mailed, Kessler contends that 15.9% of the property within the Borough had already been dedicated to parks and open spaces. Compl. ¶ 24.

A majority of the residents who responded favored acquiring Kessler's property. Compl. ¶ 25. As a result, the Borough offered Kessler $2.3 million to sell the property voluntarily, an offer that Kessler refused. Compl. ¶ 26.

With the proposed amendment to the zoning ordinance stalled, Kessler applied for a use variance with the Borough Board of Adjustment. Compl. ¶ 27. A hearing on the use variance was originally scheduled for May 24, 1994 but was postponed because Kessler failed to provide notice to neighboring property owners as required by New Jersey law. See N.J.S.A. 40:55D–12. Compl. ¶ 27.

On May 17, 1994, the Borough enacted an ordinance authorizing condemnation of the property pursuant to the New Jersey Eminent Domain Act, N.J.S.A. 20:3–1, et seq. and the New Jersey Local Lands and Building Law 40A:12–1 et seq. The stated purpose for acquiring Kessler's property was to use the property for park land, recreational use, and the protection of a critical environmental area, serving as a water recharge for wells in the area. Compl. ¶ 28.

According to the Plaintiffs, all six wells located on property adjacent to the condemned property are already purified by "air stripping units", installed because the wells were found to be contaminated by the New Jersey Department of Environmental Protection. Compl. ¶ 29. Since these mechanical purification mechanisms are already in place, Plaintiffs claim that there is no legitimate need for the Borough to condemn its property to provide a "recharge area" for the contaminated wells. Compl. ¶ 29.

On June 6, 1994, Defendants, pursuant to N.J.S.A. 20:3–8, filed a verified complaint in condemnation, as well as an order to show cause, in the New Jersey Superior Court, Law Division, Essex County. The order to show cause was returnable July 20, 1994. As part of the state condemnation proceeding, Kessler challenged the Borough's actions by denying its authority to condemn the property. See N.J.S.A. 20:3–11. As a result, all subsequent action in the state condemnation proceeding, including the vesting of title in the Borough, has been stayed pending resolution of Kessler's challenge to the Borough's authority. See id.

## II. DISCUSSION

### A. Standing

■ An outgrowth of the "case or controversy" requirement of Article III of the constitution, "[s]tanding is the determination of whether a specific person is the proper party to bring a particular matter to the Court for adjudication." Erwin Chemerinsky, *Federal*

*Jurisdiction* § 2.3.1 (1989). In order to invoke the jurisdiction of a federal court, a plaintiff must have "a personal stake in the outcome" of an otherwise justiciable controversy. *Warth v. Seldin*, 422 U.S. 490, 498–99 [95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343] (1975), U.S. Const., art. III, § 2, cl. 2. "[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant,' ... and that the injury 'fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision ...' " *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (citations omitted).

■ In addition to these three constitutional requirements for standing, the Supreme Court has also identified several prudential standing principles that require a federal court to decline jurisdiction. Even where a party has satisfied the constitutional case or controversy requirement, these prudential requirements dictate that "the Plaintiff must generally assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499, 95 S.Ct. at 2205.

■ The Supreme Court has recognized, however, several exceptions to this general rule against third party standing. A plaintiff who satisfies constitutional standing requirements can invoke a federal court's jurisdiction to protect the rights of non-parties where: (1) the third party is unable or unlikely to protect its own interests and the plaintiff is capable of adequately representing them; or (2) the plaintiff has a special relationship to the third party. Chemerinsky, § 2.3.4.

■ Another related doctrine, organizational standing, might be interpreted as an additional exception to the prudential rule against third party standing. *Id.* § 2.3.4 n. 134. Under certain circumstances, an organization whose own legal rights and interests have not been injured may seek redress on behalf of its members. *E.g., Public Interest Research Group of New Jersey, Inc. et al. v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 70 (3d Cir.1990), *cert. denied*, 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991) [*hereinafter PIRG v. Powell Duffryn*]. "Such 'representational standing' is appropriate where 1) the organization's members would have standing to sue on their own, 2) the interests the organization seeks to protect are germane to its purpose, and 3) neither the claim asserted nor the relief requested requires individual participation by its members." *Id.; accord Natural Resources Defense Council et al. v. Texaco Refining and Marketing, Inc.*, 2 F.3d 493, 504–05 (3d Cir.1993).

### 1. Kessler

In the complaint, Kessler has been designated as suing in its own right and on behalf of it patients and employees. Applying the three constitutional standing requirements: (1) injury in fact; (2) traceability; and (3) redressability; as well as prudential standing principles related to third party standing, the Court concludes that Kessler possesses standing to sue in its own right and thus does not reach the issue of whether Kessler can sue on behalf of its patients and employees.

#### a. Injury in Fact

■ Regarding Kessler's standing to sue in its own right, Defendants' objection focuses on the constitutional requirement of injury in fact. The Supreme Court has defined the injury in fact requirements as: "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351, 364 (1992) (get US cite) (citations omitted) [*hereinafter Defenders of Wildlife*]. On a motion to dismiss, a court should "presum[e] that general allegations embrace those specific facts that are necessary to support a claim". *Id.* 504 U.S. at 561, 112 S.Ct. at 2137, 119 L.Ed.2d at 363–64.

According to Defendants, Kessler lacks standing in its own right because it has not suffered an actual or threatened injury. Def.

Br. at 22. Defendants contend that Plaintiffs will not be injured unless and until Kessler's property is condemned. Since Kessler has challenged the Borough's authority to condemn the property pursuant to N.J.S.A. 20:3–11, all further action by the Borough to condemn the property has been stayed. *See* N.J.S.A. 20:3–11, *see also Bridgewater Township v. Yarnell,* 64 N.J. 211, 314 A.2d 367 (1974). As a result, the Borough has not filed a declaration of taking as provided under N.J.S.A. 20:3–17 with a recording office, such as the County Clerk, that would presumably cloud Kessler's title to the property. Therefore, Defendants argue, the injuries alleged by Kessler are not concrete but purely hypothetical. *See Defenders of Wildlife,* 504 U.S. at 560, 112 S.Ct. at 2136, 119 L.Ed.2d at 364.

While Defendants correctly argue that the potential deprivation of Kessler's property through condemnation is too hypothetical to support standing, they overlook Plaintiffs' allegations that Kessler has already been injured by the Defendants' specifically targeted and allegedly discriminatory actions. Regardless of whether the property is ultimately condemned, Plaintiffs allege that Kessler has been injured by the enactment of the municipal ordinance and the initiation of state condemnation proceeding. According to Plaintiffs, Defendants' exclusive motive in taking these actions was discriminatory animus against disabled persons in violation of the equal protection clause of the federal and state constitutions.

■ The Supreme Court has held that stigmatic injury inflicted by unconstitutional discrimination "accords a basis for standing only to 'those persons who are personally denied equal treatment". *Allen v. Wright,* 468 U.S. 737, 755, 104 S.Ct. 3315, 3326, 82 L.Ed.2d 556 (1984) (citing *Heckler v. Mathews,* 465 U.S. 728, 739–40, 104 S.Ct. 1387, 1395–96, 79 L.Ed.2d 646 (1984)). Standing cannot be used as "a vehicle for the vindication of value interests of concerned bystanders". *Id.,* 468 U.S. at 756, 104 S.Ct. at 3327 (citing *United States v. SCRAP,* 412 U.S. 669, 687, 93 S.Ct. 2405, 2415–16, 37 L.Ed.2d 254 (1973).

Although Kessler is not itself disabled, it has allegedly suffered constitutional injury by being stigmatized on the basis of its association with disabled persons. As the owner of the property targeted by the municipal ordinance for condemnation, Plaintiffs claim that the Defendants' unconstitutionally discriminatory motive resulted in Kessler being denied equal treatment. The municipal ordinance authorizing the Borough to initiate condemnation proceedings related exclusively to Kessler's property. Consequently, any stigmatic injury inflicted by the ordinance was both concrete and extremely particularized. *See Defenders of Wildlife,* 504 U.S. at 560, 112 S.Ct. at 2136, 119 L.Ed.2d at 364.

■ Furthermore, Plaintiffs claim that the allegedly unconstitutional ordinance has delayed construction of the proposed treatment facility, presumably resulting in lost profits. Moreover, Kessler has incurred expenses in petitioning for an amendment to the Borough's zoning ordinance, which it claims was unconstitutionally denied, as well as in defending its right to develop the property in the state condemnation action. *See Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 263, 97 S.Ct. 555, 562, 50 L.Ed.2d 450 (1977) [*hereinafter Arlington Heights*].

In addition to these alleged constitutional injuries, Kessler asserts a variety of statutory claims. Therefore, Kessler's standing to sue under these statutes must similarly be evaluated.

"Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute." *Warth,* 422 U.S. at 514, 95 S.Ct. at 2213.

■ Contrary to Defendants' arguments, Kessler possesses standing to protest the Defendants' alleged discriminatory conduct under the Fair Housing Act ("FHA"). The FHA confers standing upon persons or entities "aggrieved" as a result of a discriminatory housing practice prohibited by the Act. 42 U.S.C. §§ 3602(d), 3613(a)(1)(A). The FHA prohibits discrimination against the disabled. 42 U.S.C. § 3604. Kessler argues

that the Defendants' condemnation of its property constitutes a discriminatory housing practice, intended to prevent Kessler from providing services, including housing, to disabled persons. Since Kessler was directly targeted by this allegedly discriminatory housing practice, it possesses standing as an "aggrieved person" under the FHA. 42 U.S.C. § 3613(a)(1)(A).

Moreover, Kessler claims that Defendant's allegedly discriminatory housing practice has deprived it of "important social, professional, business and economic, political and aesthetic benefits" of associating with disabled persons. *Cf. Havens Realty Corp. v. Coleman,* 455 U.S. 363, 376, 375–379, 102 S.Ct. 1114, 1122–23, 1122–25, 71 L.Ed.2d 214 (1982). The Supreme Court has recognized that these types of economic and associational harms are cognizable injuries under the FHA. *Id., Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 209–212, 93 S.Ct. 364, 366–67, 34 L.Ed.2d 415 (1972); *Growth Horizons, Inc. v. Delaware Cty. Pa.,* 983 F.2d 1277, 1281 (3d Cir.1993).

■ Similarly, Kessler has suffered injury to a right conferred by the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. § 10:5, and thus possesses standing to assert claims under that statute. All provisions of the NJLAD prohibiting various types of discrimination apply to "handicapped" persons. N.J.S.A. § 10:5–4.1. Although Kessler is not handicapped, the NJLAD, like the FHA, authorizes "any person claiming to be aggrieved by ... unlawful discrimination" to file an action. N.J.S.A. §§ 10:5–12.5(b), 10:5–13. Under this standard, Kessler's allegation that it has been deprived of business and professional associations with handicapped persons constitutes an injury sufficient to support standing under the NJLAD. *Cf. Trafficante,* 409 U.S. at 208–09, 93 S.Ct. at 366–67.

These economic, stigmatic and associational injuries are not hypothetical but allegedly have already been inflicted by the Defen-

dants' enactment of the ordinance and initiation of the condemnation proceedings. *See Defenders of Wildlife,* 504 U.S. at ——, 112 S.Ct. at 2136, 119 L.Ed.2d at 364. Regardless of whether Kessler's property is ultimately condemned, the allegedly discriminatory policy embodied by the municipal ordinance has already inflicted injury by depriving Kessler of professional and business associations with disabled persons, delaying its generation of profits from the proposed facility.

■ In contrast, Kessler lacks standing to assert claims under the Americans With Disabilities Act ("ADA") because that statute confers no rights upon Kessler as a recipient of municipal services. The ADA provides relief for discrimination against persons with disabilities in three broad areas, each governed by a specific Subchapter of the Act: I. Employment; II. Public Services; and III. Public Accommodations and Services Provided by Private Entities. *See id.* In opposition to this motion Plaintiffs refuse to limit their claims to specific provisions of the ADA, but rather invoke "any applicable provisions." Pl.Br. at 28.

Based upon the scheme provided in the ADA, however, only Subchapter II of the Act, governing municipal services, can conceivably confer a right upon Kessler that is enforceable against the Defendants and is sufficient to support standing. Plaintiffs' complaint does not allege that the Defendants have discriminated in their capacities as employers. As a result, Subchapter I is inapplicable. Moreover, Subchapter III, which prohibits discrimination in public accommodations and services, applies only to "private entities". 42 U.S.C. § 12181(6). Municipalities, as well as municipal departments, instrumentalities, and agencies, are specifically excluded from the definition of "private entities" subject to Subchapter III.[1] 42 U.S.C. §§ 12181(6), 12131(1). Therefore, if Congress conferred a right upon Kessler,

1. For this reason, Plaintiffs' reliance upon § 12182(b)(1)(E), which prohibits discrimination in public accommodations and services because of an individual or entity's association with disabled persons, is misplaced. Since § 12182 is located in Title III, it does not apply to the Borough, or the Mayor and Council, who are being sued in their official capacities. *See* 42 U.S.C. § 12131(1).

sufficient to support standing, it must be found in Subchapter II of the ADA.

■ Unlike the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(a), and the FHA, 42 U.S.C. § 3610(a), which authorize any person claiming to be aggrieved by discrimination to file a complaint, *Trafficante,* 409 U.S. at 208–09, 93 S.Ct. at 366–67, Subchapter II of the ADA confers rights upon a much more narrow class of persons: only the disabled. Both 42 U.S.C. § 12132, which confers a substantive right to be free from discrimination in the provision of public services, and 42 U.S.C. § 12133, the enforcement provision (which incorporates 29 U.S.C. § 794 by reference), are limited to "qualified individual(s) with a disability". Since Kessler, an entity that serves the disabled, does not fall within this definition, Subchapter II of the ADA confers no substantive rights upon it to provide a basis for standing. Consequently, Kessler's claim based upon the ADA is dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).[2]

#### b. Traceability

■ A second constitutional standing requirement is that the personal injury must be "fairly traceable to the defendant's allegedly unlawful conduct". *Allen,* 468 U.S. at 751, 104 S.Ct. at 3324. Defendants do not seriously contest traceability.

In contrast to plaintiffs who lacked standing because they alleged indirect injury "resulting from the independent action of some third party not before the court," *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976), Kessler has alleged direct injury as a result of the Defendants' enactment of the municipal ordinance and initiation of state condemnation proceedings.

#### c. Redressability

■ Rather than contest traceability, Defendants argue that Kessler fails to meet the third constitutional standing requirement:

the alleged personal injury must be "likely to be redressed by the requested relief". *Allen,* 468 U.S. at 751, 104 S.Ct. at 3324.

According to the Defendants, Kessler's alleged injuries will not be remedied by the requested damages and injunctive relief. Defendants contend that because Kessler's property is currently zoned for educational use, invalidating the municipal ordinance that authorized the condemnation action would not insure that Kessler's proposed facility will ultimately be built. Even if the property were not subject to the condemnation action, construction of the facility depends upon Kessler obtaining a zoning variance. Therefore, Defendants argue, Kessler's alleged injuries are not redressable. Thus, Defendants claim, Kessler lacks standing and its claims should be dismissed.

With respect to Kessler's request for relief in the form of damages, particularly those allegedly incurred as a result of delayed construction of the proposed facility, Defendants' objection does not really relate to redressability but to the merits of Kessler's equal protection and FHA claims. In fact, Kessler may be entitled to damages on these claims even if the proposed facility is never built. *See e.g.,* 42 U.S.C. § 3604(f)(1)(B) (making it unlawful "[t]o discriminate … or otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of … a person residing in or *intending to reside* in that dwelling … after it is made available..") (emphasis added), 42 U.S.C. § 3602(b) (" 'Dwelling' means any building … *intended* for occupancy, as residence …") (emphasis added).

■ Regarding the injunctive relief requested by Kessler, the Court finds that invalidating the municipal ordinance authorizing the condemnation action is "substantially likely" to redress one of the harms allegedly inflicted by the Defendants: preventing Kessler's proposed facility from be-

---

**2.** Although Defendants' Notice of Motion to Dismiss relies upon Federal Rule of Civil Procedure 12(b)(6), dismissal for failing to state a claim, lack of standing is more appropriately character-ized as an absence of subject matter jurisdiction, which is a basis for dismissal under Federal Rule of Civil Procedure 12(b)(1) and can be raised by the Court on its own initiative.

ing built.[3] *See Arlington Heights,* 429 U.S. at 263, 97 S.Ct. at 562.

Where detailed building plans for a low-income housing complex had been developed and submitted to support an application for a zoning variance, that was denied, the Supreme Court held that both the builder and a prospective tenant had standing to challenge the town's racially discriminatory zoning policies. *Arlington Heights,* 429 U.S. at 261–63, 97 S.Ct. at 561–62. The Court held that the plaintiffs possessed standing even though ultimate construction of the complex depended upon receipt of the zoning variance as well as financing and other subsidies. *Compare id. with Warth,* 422 U.S. at 516, 95 S.Ct. at 2214 (home builders' association lacked standing where it failed to allege any specific project impacted by allegedly discriminatory zoning practices).

If Plaintiffs' allegation that Defendants' intent to discriminate against disabled persons was the sole motive behind the municipal ordinance is true, then there is a substantial likelihood that invalidating the ordinance will result in the proposed facility being built. Plaintiffs claim that the ordinance was enacted in order to thwart approval of an amendment to the Borough's zoning ordinance that would permit construction of the proposed facility. Furthermore, Plaintiffs contend that both the proposed amendment and Kessler's proposed facility had been approved by planning and legal experts as consistent with the Borough's master plan. Compl. ¶¶ 21, 27. If this Court strikes down the municipal ordinance because it was solely motivated by an intent to discriminate against the disabled, the zoning amendment will be acted upon by the Defendants Mayor and Council and is "substantially likely to be approved". *See Arlington Heights,* 429 U.S. at 263, 97 S.Ct. at 562. As a result, Kessler has met the redressability requirement for standing.

### d. *Prudential Considerations*

Kessler has sued in its own behalf and on behalf of its patients and employees. Defendants have objected that Kessler lacks standing to assert any claims on behalf of these third parties.

Having concluded that Kessler has standing to sue in its own right under the equal protection clauses of the state and federal constitutions as well as the FHA and NJLAD, the Court need not address the prudential prohibition against third party standing with respect to those claims. *See Arlington Heights,* 429 U.S. at 263–64, 97 S.Ct. at 562–63. Similarly, the Court need not address whether Kessler has third party standing to sue under the ADA because for the reasons stated below, the Court concludes that Plaintiff, Heather Benney possesses standing to sue under the ADA in her own right. *See id.*

### 2. *Sally Tannenbaum and Heather Benney*

■ Defendants have not contested Salley Tannenbaum's standing, as Heather Benney's legal guardian, to bring claims on Ms. Benney's behalf. In addition, Heather Benney is named individually as a Plaintiff. Since Salley Tannenbaum and Heather Benney's claims are identical, for convenience, both Plaintiffs are collectively referred to as "Ms. Benney". Defendants' objections to Ms. Benney's standing focus once again on the injury in fact requirement.

Having discussed the three constitutional standing requirements as they apply to Kessler in detail, a more brief discussion of Ms. Benney's standing is warranted. The Court concludes that Heather Benney possesses standing to sue only with respect to those

---

**3.** The Court is aware that Plaintiffs' request for injunctive relief having the effect of enjoining the state court condemnation proceeding faces a substantial obstacle: the Anti–Injunction Act, 28 U.S.C. § 2283. Defendants mention the Anti–Injunction Act in their brief as evidence of the policies of comity and federalism embodied in the abstention doctrines. Def.Br. at 6–7. Defendants have not raised the Anti–Injunction Act with respect to the issues of standing or failure to

state a claim under Federal Rule of Civil Procedure 12(b)(6). As a result, the Court is unwilling, on this motion to dismiss in lieu of an answer, to address it at this time. Plaintiffs may choose to amend the complaint so that some exception to the Anti–Injunction Act would apply. *See e.g., Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972) (holding that 42 U.S.C. § 1983 is an exception).

claims asserted under the FHA and the equal protection clauses of the federal and state constitutions.

As an injury capable of supporting Ms. Benney's standing, Plaintiffs allege that she is a former patient of Kessler's, who is disabled and "a candidate for housing in the transitional living center planned by Kessler for the Essex Fells property ..." Compl. ¶ 5. Defendants object that Ms. Benney's claimed injury is neither concrete nor imminent.

According to the Supreme Court, "assertion of a right to a particular kind of Government conduct, which the Government has violated by acting differently, cannot alone satisfy the requirements of Article III without draining those requirements of meaning." *Allen,* 468 U.S. at 754, 104 S.Ct. at 3326 (citations omitted).

In contrast, Ms. Benney has not rested upon "some abstract injury in nonobservance of the Constitution", *Id.* at 754, 104 S.Ct. at 3326 (citations omitted), but has alleged that the Defendants' actions have affected her in a particularized way, depriving her of the opportunity to obtain treatment and to reside at Kessler's proposed facility. *See Arlington Heights,* 429 U.S. at 263–64, 97 S.Ct. at 562–63. This alleged injury is sufficiently concrete for Ms. Benney to possess standing.

■ In addition, Defendants contend that Plaintiffs have not alleged sufficient facts to support a conclusion that Ms. Benney has more than a hypothetical interest in residing at Kessler's proposed facility. On a motion to dismiss, a court should "presum[e] that general allegations embrace those specific facts that are necessary to support a claim" and to survive a motion for summary judgment. *Defenders of Wildlife,* 504 U.S. at 561, 112 S.Ct. at 2137, 119 L.Ed.2d at 363–64. As a result, the Court finds that Plaintiffs' bare allegations of Ms. Benney's intentions demonstrate sufficient imminence to survive this motion to dismiss.

■ With respect to Ms. Benney's federal and state statutory claims, she has suffered injuries sufficient to confer standing under the FHA and NJLAD. Like Kessler, Ms. Benney, who has alleged her intent to reside in Kessler's proposed facility, is an aggrieved person within the meaning of the FHA and the NJLAD. *See* 42 U.S.C. § 3613(a)(1)(A), N.J.S.A. §§ 10:5–12.5(b), 10:5–13.

If Plaintiffs' allegations concerning the timing of Defendants' actions and their discriminatory motives are true, Ms. Benney's alleged injuries under the equal protection clauses of the state and federal constitutions, the FHA and the NJLAD are "fairly traceable to the challenged conduct and likely to be redressed by the requested [damages and injunctive] relief." *See Allen,* 468 U.S. at 757, 104 S.Ct. at 3327.

■ Regarding Ms. Benney's claims under the ADA, however, Plaintiffs have failed to allege sufficient facts to support Ms. Benney's standing to sue. As already discussed, Subchapter II of the ADA confers rights upon a "qualified individual with a disability", defined by § 12131 as follows:

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

While Defendants do not contest that Ms. Benney is in fact disabled, they object that she is not "qualified" because Plaintiffs have not alleged that she was denied any municipal services. Defendants are correct.

■ Although Plaintiffs blanketly assert in their briefs that they have been denied "municipal services", this allegation is not supported by their complaint. If Plaintiffs' allegations are taken as true, at best Plaintiffs have shown that Defendants refused to amend the Borough zoning ordinance in order to accommodate Kessler's proposed facility. A zoning amendment, however, is not a public service, program, or activity. As a result, Ms. Benney lacks standing to assert a claim against Defendants under the ADA. Her claim under the ADA is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

### 3. United Association for Handicapped Persons ["UAFHP"]

■ Defendants correctly object that UAFHP lacks standing to sue either in its own right or on behalf of its members.

In the complaint, a single paragraph makes reference to UAFHP, describing it as:

a non-profit corporation in the state of New Jersey, having offices at Passaic County Administration Building, 317 Pennsylvania Avenue, Paterson, New Jersey, which has as its principal purpose, the provision of services, including advocacy, information, referral and support for handicapped citizens in Passaic County and the State of New Jersey.

Compl. ¶ 6.

■ For an organization to possess standing to sue in its own right, it must satisfy the traditional test by alleging "a personal stake in the outcome" of an otherwise justiciable controversy. *Warth*, 422 U.S. at 498, 95 S.Ct. at 2204–05. An organization does not possess standing simply because it has an ideological or abstract social interest that is adversely affected by the challenged action. *Sierra Club v. Morton*, 405 U.S. 727, 735, 92 S.Ct. 1361, 1366, 31 L.Ed.2d 636 (1972). "[A]n organization has standing [however,] to challenge conduct that impedes its ability to attract members, to raise revenues, or to fulfill its purposes". Chemerinsky, § 2.3.7 (citing *Havens Realty*, 455 U.S. at 479, 102 S.Ct. at 1182).

Based upon the allegations contained in Plaintiffs' complaint, UAFHP clearly lacks standing to pursue any claims in its own right. In contrast to the organizational plaintiff in *Havens Realty*, Plaintiffs have not alleged any injury to UAFHP, such as the need to divert funds in order to thwart Defendants' allegedly illegal conduct. *See id.* From the complaint, the Court can infer that UAFHP has an ideological interest in preventing disability-based discrimination; however, this purely ideological injury is insufficient to support UAFHP's standing to sue in its own right. *See Sierra Club*, 405 U.S. at 735, 92 S.Ct. at 1366.

■ Similarly, Plaintiffs have failed to allege sufficient facts to support a finding that UAFHP has standing to sue on behalf of its members. For an organization to have "representational standing", it must show that its "members would have standing to sue on their own". *PIRG v. Powell Duffryn*, 913 F.2d at 70. Plaintiffs have failed to identify a single individual member of UAFHP. As a result, the Court cannot conclude that any of UAFHP's members has suffered an injury sufficient to confer standing. Therefore, all of UAFHP's claims are dismissed under Federal Rule of Procedure 12(b)(1) for lack of standing.

### 4. Summary of Conclusions

In summary, the Court has concluded that Kessler possesses standing to assert claims under the equal protection clauses of the state and federal constitutions as well as the FHA and NJLAD. Heather Benney has standing to pursue all of those claims as well.

Kessler and Ms. Benney's claims under the ADA and all of UAFHP's claims are dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing.

### B. Ripeness

■ In addition, Defendants move to dismiss Plaintiffs' claims on the ground that they are not yet ripe for review. Since the standing and ripeness doctrines are closely related, "they can [often] be confused or conflated". *Presbytery of New Jersey of the Orthodox Presbyterian Church et al. v. Florio et al.*, 40 F.3d 1454, 1462 (3d Cir.1994) [hereinafter *Presbytery of New Jersey*]. One commentator has distinguished the two doctrines as follows: standing relates to "who is a proper party to litigate a particular matter, ripeness [doctrine] ... determine[s] when that litigation may occur. Specifically ... [it] seeks to separate matters that are premature for review because the injury is speculative and may never occur, from those cases that are appropriate for federal court action." Chemerinsky, § 2.4.

■ Similarly, the Supreme Court has indicated that the purpose of ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."

*Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). Thus, the prototypical case not yet ripe for adjudication involves a plaintiff who seeks pre-enforcement review of a statute. *See* Chemerinsky, § 2.4.

 As enunciated by the Supreme Court, the decision whether a claim is ripe is governed by two considerations: (1) "the hardship to the parties of withholding court consideration"; and "the fitness of issues for judicial decision". *Abbott Laboratories,* 387 U.S. at 149, 87 S.Ct. at 1515.

In arguing that this controversy is not ripe, Defendants essentially reiterate their claims that the Plaintiffs have not yet been injured. According to Defendants, Plaintiffs' claims will not be ripe for judicial review unless and until Kessler's property is actually condemned.

Defendants' argument evidences the substantial overlap between standing, particularly the injury in fact requirement, and ripeness. *See Presbytery of New Jersey,* 40 F.3d at 1461–62. Having discussed at length the economic, associational, and stigmatic injuries that have already been inflicted upon the Plaintiffs Kessler and Heather Benney by Defendants' enactment of the allegedly illegal municipal ordinance, the Court need not go into detail here. Any delay in judicial review would inflict substantial harm upon Kessler, by preventing it from generating profits, and Heather Benney, by depriving her of a desired treatment opportunity. *See Abbott Laboratories,* 387 U.S. at 149, 87 S.Ct. at 1515–16. While these injuries may become more severe if Kessler's property is ultimately condemned, these potentially aggravated damages will do nothing to crystallize Plaintiffs' claims for judicial review. *See id.* As the dispute between the parties currently stands, the Court is faced with "a real and substantial controversy admitting of specific relief . . . as distinguished from an opinion advising what the law would be on a hypothetical state of facts." *Aetna Life Ins.*

*Co. v. Haworth,* 300 U.S. 227, 240, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937).

## C. Abstention

In addition, Defendants move to dismiss on the grounds that even if Plaintiffs possess standing, this Court should abstain from exercising jurisdiction. Defendants contend that Plaintiffs' federal claims can be asserted and resolved in the condemnation action currently proceeding in New Jersey Superior Court.

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation District et al. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). The Supreme Court has characterized abstention as:

> an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.

*County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959).

 Consistent with this principle that federal courts must honor a plaintiff's choice of a federal forum where federal jurisdiction is properly invoked, the Supreme Court has confined the circumstances appropriate for abstention to four general categories. These categories of abstention are commonly known by the names of the cases in which they were first recognized: (1) *Younger;* (2) *Pullman;* (3) *Burford;* and (4) *Colorado River. Grode v. Mutual Fire, Marine, and Inland Ins. Co.,* 8 F.3d 953, 956 (1993), *see also* Charles Alan Wright, *Law of the Federal Courts,* §§ 52, 52A (1994). Where these forms of abstention apply, only *Younger* invariably results in dismissal of the federal action, while *Pullman, Burford*[4] and

---

4. While "dismissal of the action, rather than retention of jurisdiction pending a state determination, is normally appropriate" in *Burford*-type abstention, Wright, *supra,* § 52, this general rule

does not apply in the eminent domain context. In two opinions issued the same day, the Supreme Court overturned a district court's dismissal of a diversity action challenging condem-

*Colorado River* can merely result in a stay of the federal action pending the outcome of state proceedings. Wright, *supra,* §§ 52, 52A.

Although the Defendants raised all four of types of abstention in their brief, at oral argument, Defendants conceded that the heart of their motion to dismiss rests upon their contention that *Younger* abstention applies.

The doctrine of abstention which has developed under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), "espouse[s] a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Ethics Committee v. Garden State Bar Ass'n.,* 457 U.S. 423, 431, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982).

■ According to the Supreme Court, *Younger* abstention is only appropriate where three prerequisites are met: (1) there is a pending state court proceeding; (2) the state court proceedings implicate important state interests; and (3) the state court proceedings provide adequate opportunity to raise constitutional challenges. *Id.* at 432, 102 S.Ct. at 2521.

With respect to the first prerequisite, the parties do not contest that a state proceeding in the form of a condemnation action in the New Jersey Superior Court, Law Division, Essex County is currently pending. Plaintiffs suggest, however, that abstention is inappropriate because this federal action was filed before the state court condemnation proceedings reached "extremely advanced stages". Pl.Supp.Br. at 4 (citing *Duty Free Shop, Inc. v. Administracion de Terrenos de Puerto Rico,* 708 F.Supp. 468, 469 (D.P.R. 1989), *aff'd* 889 F.2d 1181 (1st Cir.1989)).

In the context of state eminent domain proceedings, the Supreme Court has held that *Younger* abstention is required where "state court proceedings are initiated 'before any proceedings of substance on the merits have taken place in the federal court." *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 238, 104 S.Ct. 2321, 2328, 81 L.Ed.2d 186 (1984) (citing *Hicks v. Miranda,* 422 U.S. 332, 349, 95 S.Ct. 2281, 2291–92, 45 L.Ed.2d 223 (1975)).

■ Although Plaintiffs filed this federal action on May 18, 1994, no "proceedings of substance on the merits" had taken place before Defendants filed their state condemnation action on June 6, 1994. Not even a scheduling conference had been held in this federal action by that time. *See* Letter Order, filed May 31, 1994. Consequently, Plaintiffs' filing this federal action before the state condemnation proceeding was initiated by the Defendants does not preclude *Younger* abstention.

■ Furthermore, Plaintiffs do not seriously contest that the second prerequisite for *Younger* abstention, an important state interest, is implicated by the state court eminent domain proceeding. *E.g., Louisiana Power & Light Company v. Thibodaux,* 360 U.S. 25, 28–29, 79 S.Ct. 1070, 1072–73, 3 L.Ed.2d 1058 (1959) (describing state eminent domain proceedings as "intimately involved with state prerogative").

*1. Younger Abstention Applies to Kessler's Claims for Injunctive Relief But Not To Its Claims for Monetary Damages.*

■ With respect to Kessler's claims, the primary point of contention between the parties is whether the third prerequisite for *Younger* abstention is met: whether the state court condemnation proceedings afford Kessler an adequate opportunity to raise its

---

nation of property, *Allegheny County v. Frank Mashuda Co.,* 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959), and affirmed another district court's decision to stay the federal action pending a determination in state court, *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959). Some commentators and courts have treated *Thibodaux* as embodying a separate theory of

abstention, distinct from that enunciated in *Burford. See* Wright, *supra,* § 52, *Grode,* 8 F.3d at 856 (describing district court's opinion). The Third Circuit, however, has rejected this position, stating that *"Thibodaux* is really a variant of *Burford* abstention and has not evolved as a separate doctrine of its own". *Grode,* 8 F.3d at 957.

federal claims, so that abstention is appropriate.

Under the New Jersey Eminent Domain Act, the New Jersey Superior Court has jurisdiction over:

"all matters in condemnation, and all matters incident thereto and arising therefrom, including ... jurisdiction to determine the authority to exercise the power of eminent domain ..."

N.J.S.A. § 20:3–5. Moreover, New Jersey provides a defendant in a condemnation action the opportunity to object to the condemning body's authority to condemn. N.J.S.A. § 20:3–11. In the past, the New Jersey Superior Court has allowed the party whose property is at issue to inquire as to whether the party bringing the condemnation action "was actuated by improper motives, bad faith, or some other consideration amounting to a manifest abuse of the power of eminent domain." *Tennessee Gas Transmission Co. v. Hirschfield*, 38 N.J.Super. 132, 138, 118 A.2d 64 (App.Div.1955), 39 N.J.Super. 286, 288, 120 A.2d 886 (1956).

As provided in N.J.S.A. § 20:3–11, Kessler has objected to the Borough's authority to condemn in its answer to the complaint in condemnation, on the grounds that it violates the same federal and state constitutional and statutory provisions asserted in this action. "It would be inappropriate for ... [this Court] to assume that the [New Jersey] courts would refuse to consider plaintiffs federal constitutional [and statutory] claims once they were properly raised in those proceedings." *Ahrensfeld v. Stephens*, 528 F.2d 193, 199 (7th Cir.1975). If successful, Kessler's challenge to the Borough's authority to condemn would have the same effect as the injunctive relief requested from this Court: invalidating the municipal ordinance and preventing the condemnation from taking place. The Court concludes that Kessler has an adequate opportunity to raise its request for injunctive relief below. Thus, Kessler's claims for injunctive relief under all of the relevant statutes will be dismissed because *Younger* abstention applies. *See Middlesex Ethics Comm'n*, 457 U.S. at 432, 102 S.Ct. at 2521.

Even where the three prerequisites for *Younger* abstention are met, an exception exists where a plaintiff makes a showing of "bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate". *Middlesex County Ethics Committee*, 457 U.S. at 435, 102 S.Ct. at 2523, *Schall v. Joyce*, 885 F.2d 101, 106, 111 (3d Cir.1989). While courts have consistently reaffirmed the existence of this exception to *Younger* abstention where a plaintiff has demonstrated bad faith or harassment, *e.g., Schall*, 885 F.2d at 106, in practice, this exception is used extremely sparingly. Chemerinsky, § 13.4 (citing Wingate, *The Bad Faith Exception to the Younger Doctrine: Exploring the Empty Universe*, 5 Rev. of Litig. 123 (1986)).

According to the Supreme Court, the bad faith exception only applies where the federal plaintiffs allege that the state courts themselves, not merely the state court plaintiffs, are acting in bad faith. *Compare Juidice v. Vail*, 430 U.S. 327, 338, 97 S.Ct. 1211, 1218–19, 51 L.Ed.2d 376 (1977) *with Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) (plaintiffs, civil rights workers, alleged that they were subjected to successive state prosecutions for purpose of harassment, not conviction, and that impermissible bias of state judiciary made it practically impossible to raise these claims in state court). For this reason, the Supreme Court held that a plaintiff's allegations that creditors prosecuting contempt proceedings in state court were acting in bad faith were insufficient for exception to *Younger* to apply. *Juidice*, 430 U.S. at 338, 97 S.Ct. at 1218–19.

As support for the argument against abstention, Plaintiffs cite *Oxford House–Evergreen et al. v. City of Plainfield*, 769 F.Supp. 1329, 1337–1340 (D.N.J.1991). In *Oxford House–Evergreen*, the district court's decision not to abstain under *Younger* was based in part on the local zoning board's failure to consider the applicability of the FHA, in spite of a court order to do so, before deciding that use of a particular house as a group home for recovering alcoholics was not a permissible under local zoning law. *Id.* at 1333, 1336. Since the dispute was

before the local zoning board on a referral from the New Jersey Superior Court, the type of judicial bad faith or inadequacy discussed in *Juidice*, 430 U.S. at 338, 97 S.Ct. at 1218–19, was arguably present.

While Kessler has alleged that Defendants enacted the municipal ordinance and initiated the state court condemnation proceeding with a discriminatory motive, which might be considered "bad faith", it has not alleged that the New Jersey Superior Court is biased in any way that would prevent enforcement of its rights in state court. Thus, the bad faith exception to *Younger* does not apply. As a result, this Court must abstain from adjudicating Kessler's claims for injunctive relief.

■ According to Defendants, *Younger* abstention applies not only to Kessler's claims for equitable relief, but also to its claims for damages. Contrary to Defendants' position, "[i]t is settled in this circuit that a district court, when abstaining from adjudicating a claim for injunctive relief, should stay and not dismiss accompanying claims for damages and attorney fees when such relief is not available from the ongoing state proceedings." *Monaghan v. Deakins*, 798 F.2d 632, 635 (3d Cir.1986), *aff'd*, 484 U.S. 193, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988); *see Williams v. Hepting*, 844 F.2d 138, 144–45 (3d Cir.1988), *cert. denied*, 488 U.S. 851, 109 S.Ct. 135, 102 L.Ed.2d 107 (1988); *Crane v. Fauver*, 762 F.2d 325, 328 (3d Cir.1985); *Williams v. Red Bank Board of Educ.*, 662 F.2d 1008, 1023–24 (3d Cir. 1981).

Although New Jersey law permits Kessler to deny the Borough's authority to condemn as a defense in the condemnation action, it apparently does not provide an opportunity to cross-claims for damages. *See* N.J.S.A. § 20:3–11. Defendants have not contested this point. Since Kessler does not have an adequate opportunity to raise its claims for damages below, *Younger* abstention is not appropriate. *See Monaghan*, 798 F.2d at 635, *Middlesex Ethics Comm'n.*, 457 U.S. at 432, 102 S.Ct. at 2521. Therefore, the Court will not abstain from adjudicating Kessler's remaining claims for damages under the FHA, equal protection clauses of the federal and state constitutions, and the NJLAD.

■ The Court finds, however, that at this juncture, Kessler's damage claims are "so intertwined with and dominated by the condemnation claim", *Forest Hills Utility Authority v. City of Heath*, 539 F.2d 592, 596 (6th Cir.1976), that in the interest of comity and federalism this Court will stay resolution of Kessler's damage claims pending the final resolution of the state condemnation proceeding. *See e.g., Monaghan*, 798 F.2d at 635. With respect to Kessler's damage claims, Defendants may again move to dismiss at some future date.

*2. Younger Abstention Does Not Apply to Salley Tannenbaum or Heather Benney's Claims Because They Are Not Parties to the State Court Condemnation Proceeding.*

■ Among the Plaintiffs in this federal action, only Kessler has been named as a Defendant in the state condemnation proceeding. In contrast, the remaining Plaintiffs, Sally Tannenbaum and Heather Benney (collectively referred to as "Heather Benney") are not parties to the state condemnation proceeding. "As the Supreme Court made clear in *Doran v. Salem Inn, Inc.* . . . where the plaintiff in a federal action is not a party to the state proceeding, *Younger* concerns about federal adjudication do not arise." *Sullivan v. City of Pittsburgh*, 811 F.2d 171, 177 (3d Cir.1987) (citing 422 U.S. 922, 930, 95 S.Ct. 2561, 2567, 45 L.Ed.2d 648 (1975)), *cert. denied* 484 U.S. 849, 108 S.Ct. 148, 98 L.Ed.2d 104 (1987).

Even where parties to the federal and state court proceedings are legally distinct, the Supreme Court has held that parties who are "too closely related should be treated as one party for *Younger* purposes." *Id., see also Hicks v. Miranda*, 422 U.S. 332, 348–49, 95 S.Ct. 2281, 2291–92, 45 L.Ed.2d 223 (1975). The Third Circuit has "specifically interpreted *Doran* as requiring unitary treatment under *Younger* only where there exists 'an identity of economic activities and interests.'" *Sullivan*, 811 F.2d at 178 (citing *New Jersey–Philadelphia Presbytery of the Bible Presbyterian Church v. New Jersey State Bd. of Higher Educ.*, 654 F.2d 868 (3d

Cir.1981) [*hereinafter New Jersey–Philadelphia Presbytery* ] ). According to the Third Circuit, such an identity is present only in two types of cases: (1) " 'an employer's federal suit when its employees assert identical interests in state court' "; and (2) "cases in which federal plaintiffs are closely related to state defendants 'in terms of ownership, control and management.' " *Sullivan,* 811 F.2d at 178 (citations omitted).

Between Kessler and Heather Benney " 'an identity of economic activities and interests' " justifying unitary treatment under *Younger* simply does not exist. *See id.* Heather Benney is related to Kessler neither by an employer/employee relationship nor " 'in terms of ownership, control and management.' " *See id.*

■ Moreover, *Younger* abstention is not appropriate merely because a federal plaintiff, who is not a party to ongoing state proceedings, asserts federal rights based upon the same statutes and constitutional provisions as an entity that is in fact a party to those proceedings. *See New Jersey–Philadelphia Presbytery,* 654 F.2d at 877–78.

In *New Jersey–Philadelphia Presbytery,* an action to enjoin Shelton College from operating without a required license was already pending in state court when the plaintiffs, a Church, students, parents and teachers, initiated a federal lawsuit under 42 U.S.C. § 1983 alleging a variety of First and Fourteenth Amendment violations. *Id.* at 871. The Third Circuit overturned the district court's decision to abstain under *Younger* because the Church, students, and parents had asserted First and Fourteenth Amendment rights distinct from those claimed by Shelton College. *Id.* at 877. For example, Shelton College asserted its First and Fourteenth Amendment "right to exist as a religious-educational institution", whereas the student-plaintiffs were asserting their rights (under the same constitutional provisions) to receive religious information and ideas. *Id.* at 878. Since the federal plaintiffs, who were not parties to the state action, sought to enforce "independently assertable rights", *Younger* abstention was inappropriate. *Id.*

■ Similarly, Heather Benney asserts distinct, independently assertable federal rights. Whereas Kessler seeks to enforce its rights under the FHA and equal protection clauses of the state and federal constitution to be free from discrimination based upon its association with disabled persons, Heather Benney asserts her right under the same federal laws to be free from discrimination on the basis of her own disability. Furthermore, Kessler claims damages flowing from the denial of its right to provide services to disabled persons, while Heather Benney's alleged damages result from her inability to obtain services from Kessler at its proposed facility. Compl. ¶ 5. Under the FHA and equal protection clauses, these are "independent federal interests" which justify "a separate federal action." *Id.* at 881.

■ Defendants' contention that this Court should abstain because Heather Benney may intervene in the condemnation proceeding pursuant to New Jersey Court Rule 4:33–1, permitting intervention as of right in civil actions, even if it is correct, is inconsistent with this principle enunciated in *New Jersey–Philadelphia Presbytery. See id.*

Since the Court concludes that Kessler and Ms. Benney should not be accorded unitary treatment under *Younger,* this Court's adjudication of Ms. Benney's claims "creates no presumption of state adjudicative inadequacy" with respect to the ongoing condemnation proceedings in New Jersey Superior Court. *Sullivan,* 811 F.2d at 177. Consequently, *Younger* abstention does not apply to Heather Benney's claims.

*D. Plaintiffs' Alleged Failure to State Claims Under the Relevant Statutes*

In the discussion of standing, this Court addressed whether Plaintiffs are the appropriate parties "to bring [this] particular matter to the Court for adjudication", *See* Chemerinsky, § 2.3.1 (1989). With respect to those constitutional and statutory claims for which Plaintiffs possess standing, the Court now considers whether Plaintiffs have stated claims upon which relief can be granted, in order to survive Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

### 1. Rule 12(b)(6) Standard

█ Federal Rule of Civil Procedure 12(b)(6) allows a party to move for a dismissal based upon the pleader's "failure to state a claim upon which relief can be granted." As the long-established federal policy of civil litigation is to decide cases on the proofs, *Melo–Sonics Corp. v. Cropp,* 342 F.2d 856 (3d Cir.1965), the district courts generally disfavor Rule 12(b)(6) motions. *Panek v. Bogucz,* 718 F.Supp. 1228, 1229 (D.N.J.1989).

█ In deciding a motion to dismiss for failure to state a claim, all allegations in the pleadings must be accepted as true and the plaintiff must be given the benefit of every favorable inference that can be drawn from those allegations. *See Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957); *Wisniewski v. Johns–Manville Corp.,* 812 F.2d 81, 83 n. 1 (3d Cir.1987). "All the rules require is a short and plain statement of the claim that gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. at 103.

The rule, however, does require that the pleader "state a claim upon which relief can be granted." Having accepted the facts in the pleadings as true and giving them all reasonable inferences, the Court may dismiss under Rule 12(b)(6) where the pleadings lack any cognizable basis in the law. The United States Supreme Court explained:

> Rule 12(b)(6) authorizes a court to dismiss a claim *on the basis of a dispositive issue of law* [citations omitted]. This procedure, operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and factfinding. Nothing in Rule 12(b)(6) confines its sweep to claims of law that are obviously insupportable. On the contrary, if as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,' [citation omitted], a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or a close but ultimately unavailing one. What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations. District court judges looking to dismiss claims on such grounds must look elsewhere for legal support.

*Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 1832–33, 104 L.Ed.2d 338 (1989) (emphasis added).

### 2. Kessler and Heather Benney State a Claim under the Equal Protection Clause of the Federal Constitution.

█ Plaintiffs contend that Defendants' enactment of the municipal ordinance and initiation of condemnation proceedings in New Jersey Superior Court violated the equal protection clauses of the state and federal constitutions. For the purposes of this motion, the Court need not distinguish between the two constitutional provisions. New Jersey's standard for equal protection, *see* N.J. Const. Art. 1, ¶ 1, parallels that under the federal constitution. *Chamber of Commerce of U.S. v. State,* 89 N.J. 131, 157–58, 445 A.2d 353 (1982). Therefore, if Plaintiffs state a claim under the federal constitution, they have made out a state constitutional claim as well.

█ The Fourteenth Amendment to the federal constitution provides that no state shall " 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (citing *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982)). For this reason, a law which appears neutral on its face may not be discriminatorily applied to individuals based upon some suspect trait. *E.g., Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886).

In spite a Congressional finding that disabled persons are a "discrete and insular minority", 42 U.S.C. § 121017, a phrase that has traditionally been associated with strict scrutiny, *see United States v. Carolene Products,* 304 U.S. 144, 152–53 n. 4, 58 S.Ct. 778, 783 n. 4, 82 L.Ed. 1234 (1938), the Third Circuit has held that classifications on the

basis of disability are subject to a rational basis review. *Contractors Ass'n of Eastern Pa., Inc. v. City of Philadelphia,* 6 F.3d 990, 1001 (3d Cir.1993), *see also Heller v. Doe,* —— U.S. ——, ——, 113 S.Ct. 2637, 2642–43, 125 L.Ed.2d 257 (1993) (refusing to consider whether higher standard of review should apply because issue not raised below).

■■■ A classification will withstand rational basis scrutiny if it is "rationally related to a legitimate government purpose." *Cleburne,* 473 U.S. at 440, 105 S.Ct. at 3254. "Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate government purpose". *Id.* (citations omitted). The governmental unit that enacts a statute subject to rational basis scrutiny is not required to articulate a purpose for the statute or to present evidence to sustain its rationality. *Id.* Rather, "a statute is presumed constitutional, and 'the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it' ". *Id.* (citations omitted).

Accepting Plaintiffs' allegations as true, the Court concludes that they have alleged sufficient facts discrediting all conceivable justifications for the municipal ordinance to survive this motion to dismiss. "[M]ere negative attitudes, or fear [of the disabled], unsubstantiated by factors which are properly cognizable" in a local government's decision to exercise the power of eminent domain cannot justify the alleged differential treatment of the Plaintiffs as owners and potential occupiers of this property. *Cleburne,* 473 U.S. at 448, 105 S.Ct. at 3258–59.

■■■ While Defendants' proffered justification for condemning the property, use as public park and environmentally protected area to recharge wells, arguably explains why this particular property was selected for condemnation, it does not explain why Kessler and the College have received differential treatment as owners of the property.

By challenging Defendants' actions of enacting the municipal ordinance and initiating condemnation proceedings in New Jersey Superior Court, Plaintiffs essentially allege that Defendants exercised their power to condemn in a manner which discriminates against the disabled. According to the Plaintiffs, the property specified for condemnation by the Borough's ordinance was offered for sale to the public for almost two years before Kessler entered into a contract to purchase it from Northeastern Bible College ("the College"), the prior owners. Compl. ¶¶ 10, 12. The Borough was apparently aware that the College's property was for sale because in August, 1991, the town purchased a three acre portion of the property for use as a soccer field. Compl. ¶ 11. During the two year period when the College property was for sale, Plaintiffs allege that the Borough "made no effort" to purchase the remainder of the property. Compl. ¶ 12.

Thus, the relevant comparison for the purpose of this equal protection claim is between the College and Kessler as owners of the property. Plaintiffs allege that Kessler and the College were similarly situated but for their association with disabled persons. *See Cleburne,* 473 U.S. at 449–50, 105 S.Ct. at 3259–60.

Defendants cannot justify their actions on the grounds that the results of the questionnaire mailed to Borough residents provided a democratic mandate for condemning the property. As the Supreme Court stated in *Cleburne,*

> It is plain that the electorate as a whole, whether by referendum or otherwise, could not order a city action violative of the Equal Protection Clause, and the city may not avoid the strictures of the Clause by deferring to the wishes or objections of some fraction of the body politic.

*Id.* Plaintiffs have alleged that the sole motive for the condemnation was the intent to discriminate against the disabled and those who serve them. Consequently, they have stated a claim under the equal protection clauses of the state and federal constitutions.

### 3. Both Kessler and Heather Benney Have Stated a Claim Under the Fair Housing Act.

■■■ In Plaintiffs' complaint, they allege that the Defendants, by enacting a municipal ordinance and initiating condemnation pro-

ceedings in New Jersey Superior Court, have intentionally prevented Kessler from establishing a transitional living facility, designed to treat and to house approximately twenty disabled persons. Moreover, Plaintiffs allege that Defendants' stated purpose for their action, to acquire Kessler's property for a public park, is merely a pretext. Plaintiffs allege that Defendants' actual motive is to prevent disabled persons and the health care professionals who treat them from coming to Essex Fells because of their disabilities or association with disabled persons. According to Plaintiffs, Defendants' actions constitute a "discriminatory housing practice" in violation of the Fair Housing Act, 42 U.S.C. §§ 3604–3616(a).

The Fair Housing Act ("FHA") makes it unlawful for any non-exempt person or entity:

> To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—
>
> (A) that person; or
>
> (B) a person residing or intending to reside in that dwelling after it is sold, rented, or made available; or
>
> (C) any person associated with that person.

42 U.S.C. § 3604. The FHA defines a "dwelling" covered by the act as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence" as well as "any vacant land ... offered for sale or lease for the construction or location thereon of any such structure, building, or portion thereof." 42 U.S.C. § 3602(b). Local governments are not exempt from the FHA's requirements. See §§ 3603(b), 3607 (governing exemptions).

In the complaint, Plaintiffs have alleged all elements necessary to support a claim under the FHA. Plaintiffs have alleged that Defendants' enactment of the municipal ordinance has as a practical matter, made a piece of property, the former Bible College site, un-

available to Kessler. Kessler claims that Defendants' motive was to discriminate against Kessler based upon its association with disabled persons. Kessler intended to construct a facility on that property to treat and to house disabled persons. Therefore, Plaintiffs have stated a claim under FHA that is sufficient to survive Defendants' motion to dismiss.

### 4. Both Kessler and Heather Benney's Claims Under NJLAD Must Be Dismissed for Lack of Jurisdiction.

 According to Defendants, Plaintiffs' claims under NJLAD must be dismissed because they relate to alleged discrimination on the basis of handicap in the regulation of land use and housing by a municipality, which is prohibited by N.J.S.A. § 10:5–12.5(a). Defendants concede that the alleged type of discrimination is actionable; however, they contend that such actions must be brought in New Jersey Superior Court, pursuant to N.J.S.A. 10:5–12.5(b).[5] That section provides that:

> Notwithstanding ... section 10:5–13, any person claiming to be aggrieved by unlawful discrimination under this section *shall* enforce this section by a private right of action in Superior Court.

N.J.S.A. 10:5–12.5(b).

 In contrast, Plaintiffs contend that claims under § 10:5–12.5 are not restricted to New Jersey Superior Court. Plaintiffs argue by analogy to N.J.S.A. § 10:5–13, the general NJLAD enforcement provision. Claims under that section are consistently resolved by federal courts. *E.g., Levinson v. Prentice–Hall, Inc.,* 868 F.2d 558 (3d Cir.1989), *McKenna v. Pacific Rail Serv.,* 817 F.Supp. 498 (D.N.J.1993).

Plaintiffs' analogy ignores an extremely important distinction between claims under the two enforcement provisions. The general enforcement provision, N.J.S.A. 10:5–13, contains permissive language ("may" initiate

---

5. Although Defendants' Notice of Motion to Dismiss relies upon Federal Rule of Civil Procedure 12(b)(6), dismissal for failure to state a claim, with respect to the Plaintiff's NJLAD claims, Defendants are really arguing that this Court lacks subject matter jurisdiction, which is a basis for dismissal under Federal Rule of Civil Procedure 12(b)(1) and can be raised by the Court on its own initiative.

suit in Superior Court), while N.J.S.A. 10:5–12.5, governing discrimination in land use policy by a municipality, states that an action "shall" be brought in Superior Court.

Plaintiffs argue that this language in § 10:5–12.5 means that the alternative remedy of filing a complaint with the New Jersey Division of Civil Rights provided in § 10:5–13 is not available for claims involving alleged discrimination in land use by a municipality. Plaintiffs disagree, however, that § 10:5–12.5 requires adjudication in New Jersey Superior Court.

This Court concludes that the New Jersey Superior Court has exclusive jurisdiction over Plaintiffs' NJLAD claims. Given the strong state interests involved in land use regulation, which this Court noted in its discussion of abstention, *supra*, it is entirely plausible that the New Jersey Legislature intended to avoid federal court interference in this area. As a result, this Court sees no reason not to accord § 10:12.5 its plain meaning. This federal district Court lacks jurisdiction over claims of discrimination in land use policy by a municipality arising under N.J.S.A. 10:5–12.5.

In order to avoid dismissal, Plaintiffs argue that other provisions of NJLAD, enforceable under § 10:5–13, support their claims for relief. Plaintiffs argue that the NJLAD makes it unlawful "for any person to refuse to buy from, sell to, lease from or to, license, contract with, trade with, or otherwise to do business with any other person ..." on the basis of handicap. N.J.S.A. 10:5–12($l$), 10:5–4.1.

Plaintiffs simply have not alleged facts sufficient to support a claim under this provision of NJLAD. Plaintiffs have not alleged that Defendants refused to engage in any form of business activity with them. Rather, Plaintiffs claims center upon Defendants' allegedly discriminatory decision to do business with them by offering to purchase Kessler's property and then attempting to condemn it. Thus, section 10:5–12($l$) is simply not implicated on these facts.

Since the relevant provision of the NJLAD, § 10:5–12.5, making it unlawful for a municipality to discriminate in its land use and housing policy, requires those claims to be brought in New Jersey Superior Court, this Court must dismiss Plaintiffs' claims under NJLAD for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

## III. CONCLUSION

For the reasons set forth in this Opinion, Defendants' motion is **GRANTED** with respect to all claims asserted by the United Association for Handicapped Persons. Moreover, Defendants' motion is **GRANTED** regarding the claims of Kessler Salley Tannenbaum, and Heather Benney under the Americans with Disabilities Act. Furthermore, Kessler, Ms. Tannenbaum and Ms. Benney's claims under the New Jersey Law Against Discrimination are **DISMISSED,** without prejudice because this Court lacks subject matter jurisdiction.

In addition, Defendants' motion is **GRANTED** with respect to Kessler Institute for Rehabilitation's claims for injunctive relief under the Fair Housing Act, the equal protection clauses of the state and federal constitutions.

Defendants' motion to dismiss Plaintiff, Kessler Institute for Rehabilitation's claims for damages under the Fair Housing Act and the equal protection clauses of the state and federal constitutions is **DENIED;** however, adjudication of those claims is **STAYED** pending the outcome of the condemnation action pending in New Jersey Superior Court, Law Division, Essex County.

Finally, Defendants' motion to dismiss the claims of Salley Tannenbaum and Heather Benney, is **DENIED** with respect to their claims under the equal protection clauses of the state and federal constitutions and the Fair Housing Act.